117 N.J. Super. 112 (1971)
283 A.2d 759
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARL ERNEST RHEIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1971.
Decided November 17, 1971.
*114 Before Judges CONFORD, MATTHEWS and FRITZ.
Mr. Frank R. Krack, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney; Mr. George E. Pollard, Assistant Deputy Public Defender, of counsel).
Mr. Edward Roy Rosen, Assistant Prosecutor, argued the cause for respondent (Mr. Vincent P. Keuper, Monmouth County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, P.J.A.D.
This is an appeal from denial by the Monmouth County Court of post-conviction relief sought by defendant.
A two-count indictment was returned against defendant charging (1) carnal abuse of a seven-year-old female child, contrary to N.J.S.A. 2A:138-1 (a high misdemeanor, subject to fine and imprisonment up to 30 years), and (2) *115 inducement of a four-year-old child to do and submit to an act tending to impair her morals, contrary to N.J.S.A. 2A:96-3 (a misdemeanor, subject to fine and imprisonment up to three years). Defendant first pleaded not guilty but on April 15, 1969 appeared before the court with counsel assigned to him by the Public Defender, withdrew his plea of not guilty and entered a plea of guilty to the first count of the indictment.
On June 13, 1969 defendant was sentenced on his plea, pursuant to the Sex Offender Act, to the Diagnostic Unit of the State Prison Farm at Rahway for an indeterminate term. Under that act the defendant can be kept so confined for the maximum of 30 years prescribed for the offense by statute. At the same time, on motion of the prosecutor and concededly as a result of a plea bargain with defendant, the second count of the indictment was dismissed.
Defendant took no appeal but filed a petition for postconviction relief on January 12, 1970, asserting denial of his rights under the Sixth and Fourteenth Amendments and specifying various acts of inadequacy or ineffectiveness of counsel in respect of the taking of the plea of guilty. At the hearing defendant testified that K. (not appellate counsel), assigned counsel from the Public Defender's office, saw him at the court house for 20 minutes on the day of the plea and advised him to plead guilty. He testified:
Q. As a result of that conversation what did you decide to do? A. Well, through his advice I pleaded guilty to a carnal abuse charge, but I didn't understand the charge. I mean, I didn't commit carnal abuse actually, but the way he explained it to me, if I as much as put my hands on the girl this was carnal abuse, but no private parts of my body touched hers in any way.
On cross-examination defendant conceded he had signed Criminal Procedure Form 13A before entering his plea and that he understood what he was doing except that he "didn't understand the charge of carnal abuse. This wasn't explained *116 to me thoroughly. * * * [K.] said if I as much as laid my hand on the girl this was considered carnal abuse."
On redirect examination defendant testified:
Q. What was your understanding of putting your hands on the girl; in other words, just putting your hands, say on her shoulder or what exactly was your understanding. A. Yes, on her shoulder or legs and things like this. I mean, actually, I did molest the child. This I admit. But I didn't attempt to have intercourse with her.
In defense the State adduced the testimony of K. He said he had consulted with an investigator for the Public Defender's office as well as with a prosecutor's representative examined the prosecutor's file on the case and conferred with defendant on the morning the plea was entered. He had determined that the prosecutor's office would be willing to accept a plea on the carnal abuse count and consent to a dismissal of the count for impairment of morals. He advised defendant that in view of his prior sex offense record and the "fresh complaint" of the child he would probably be convicted if tried on the carnal abuse count. He also advised him that this was "a crime that was considered under the Sex Offender's Act." He did not testify as to what, if anything, defendant told him he actually did, physically, with the child.
On cross-examination K. testified:
Q. Did Mr. Rhein ever indicate to you that he actually committed the crime of carnal abuse by abusing these children? A. Yeah, we discussed that, of course, and Mr. Rhein indicated to me that he said, "Well, I really didn't commit carnal abuse," and, of course, it was then my duty to try to determine what he meant, what his understanding of carnal abuse was, and we discussed it and I told him that it wasn't necessary under our law that he commit sexual intercourse. That the Statute was changed and it was intended to encompass more than that, and that if he fondled any of her private parts and molested her in any way which involved sexual parts or any part of his sexual part of his body that came in touch, in contact with any part of her body that it would be involved and I explained to him the meaning of a debauching rather than a rape or a sexual intercourse type of thing. [Emphasis ours]
*117 Unfortunately, Mr. K.'s advice to defendant as to the constituents of the crime was substantially different from the definition of carnal abuse under our cases. This is to the effect that "`carnal abuse' is an act of debauchery of the female sexual organs by those of the male which does not amount to penetration, while carnal knowledge connotes penetration." State v. Huggins, 84 N.J.L. 254, 259 (E. & A. 1913); State v. MacLean, 135 N.J.L. 491, 494 (Sup. Ct. 1947); Application of Faas, 42 N.J. Super. 31, 35 (App. Div. 1956).
The record of these proceedings indicates that defendant's present position as to his culpable conduct in this matter is that he "molested" the child, inferably manually, but that his conduct was short of the legal requirements of carnal abuse as above defined. On the other hand, statements of the complaining child in the possession of the police purport to indicate an act of sexual intercourse. However, defendant is attended by the presumption of innocence until convicted by trial or on a plea of guilt voluntarily and understandingly made. The crux of the issue before us is whether defendant's plea was in fact understandingly made. Goodlet v. Goodman, 34 N.J. 358, 371-372 (1961). If not, it must be set aside. Ibid. R.R. 3:5-2(a), which was in effect at the time of this plea, directed that a plea of guilty should not be accepted "without first determining that the plea is made voluntarily with understanding of the nature of the charge." Inspection of the transcript of the plea and sentencing proceedings herein indicates that no one in the course thereof explained the meaning of carnal abuse to defendant and that he was not asked to state specifically what he had done with the girl so that the court might satisfy itself that he was, by such admission, in fact guilty of the crime.[1]
*118 Basically, it was the defendant's position below, and is here, that he relied on assigned counsel's advice in deciding to plead guilty; that counsel's advice as to what constituted carnal abuse was erroneous, and that had he known the crime connoted the physical approximation of the sexual organs of both parties he would not have pleaded guilty.
In order to hold for defendant we are not necessarily required first to come to agreement with his factual assertion that he would not have pleaded guilty had he been correctly advised as to the law. At least in the absence of a concession by defendant below or here of facts equating with criminal liability, he has a prima facie right to assert a denial of due process if he can establish, as he did here, that when he pleaded guilty he was ignorant of the true nature of the charge against him because of erroneous legal advice by assigned counsel.
* * * If a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts. [McCarthy v. United States, supra, 394 U.S. at 466, 89 S.Ct. at 1171; emphasis ours]
See also Wilcox v. United States, 381 F.2d 450 (9 Cir.1967).
That defendant here did not possess a correct understanding of the relevant law was affirmatively established by the testimony of K., adduced by the State and quoted above. We therefore conclude that the plea of guilt of carnal abuse was void and must be set aside, along with the consequent conviction.
The possibility of the foregoing conclusion caused this court on its own motion to raise the question at oral *119 argument as to whether the dismissal of the charge of impairment of morals (involving the other child) should not be vacated and the count reinstated if the carnal abuse conviction were set aside on this appeal. The State has embraced the affirmative of that issue and moves that we reinstate the impairment of morals charge if the carnal abuse plea and conviction is set aside. The critical issue is whether reinstatement of the impairment of morals count would place the defendant in double jeopardy, contrary to the state and federal constitutions. Both sides have submitted memoranda on the point which we have studied. We agree with the State's position and order reinstatement of the impairment of morals count of the indictment.
In weighing a double jeopardy argument it is incumbent upon the courts to consider whether acceptance of the contention in the particular circumstances would create substantial obstacles to the fair administration of justice without the saving necessity of curbing the oppressive practices which gave birth to the constitutional prohibitions of prosecution after acquittal or subjection to double jeopardy of conviction. See State v. Farmer, 48 N.J. 145, 169 (1966), cert. den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967). Plea bargaining, in appropriate circumstances and properly conducted and controlled, is a salutary and approved practice in this State, as generally, in the interest of the just and expeditious disposition of criminal litigation. See State v. Dent, 51 N.J. 428, 438 (1968); American Bar Association Project on Minimum Standards for Criminal Justice, "Standards Relating to Pleas of Guilty," (Approved Draft 1968), at 61-62. To permit a defendant through his attorney to negotiate with the State a plea of guilty on one of multiple charges against him in return for dismissal of others, and later, albeit on proper grounds, to disavow and be relieved of the guilty plea, but yet to retain the negotiated absolution on the dismissed charges, would be to produce a climate decidedly discouraging to plea negotiation by prosecuting authorities.
*120 Moreover, considerations of fairness to society as well as to the accused are relevant in weighing a contention of former acquittal. In State v. Williams, 39 N.J. 471 (1963), cert. den. 374 U.S. 855, 83 S.Ct. 1924, 10 L.Ed.2d 1075 (1963), it appeared that one indicted for murder had succeeded in persuading the court, on the recommendation of the prosecutor, to accept a plea of non vult to second-degree murder on which he was accorded a 10-15-year prison term. Thereafter he moved for and obtained a vacation of his sentence and plea on the ground the plea had not been made voluntarily and understandingly. After his conviction of first-degree murder at the ensuing trial, and imposition of sentence of life imprisonment, he appealed on the ground he was entitled to have the prosecution limited to a charge of second-degree murder by virtue of the acceptance of his prior plea of non vult to that crime. In rejecting the contention the court said:
Since the defendant's own actions led the trial court to accept his plea of non vult in the first place, it would be unjust and opposed to the public interest to permit him, upon the successful assertion that such plea was not understandingly made, to raise the termination of jeopardy resulting from the acceptance of his plea in the former trial as a bar to the present prosecution. Fair dealing to society requires that once he has been permitted to withdraw his plea, he should be placed in the same position with respect to the indictment as he was before the plea was entered. See State v. Stacy, 43 Wash.2d 358, 261 P.2d 400 (Sup. Ct. 1953). [39 N.J. at 480-481]
In State v. Stacy, the Washington case cited in the foregoing excerpt from Williams, the court dealt squarely with the problem confronting us here, and held the principle of double jeopardy would not preclude putting the State and the defendant back in statu quo after successful repudiation by the defendant of a plea of guilt in return for which the State had dismissed other charges. The court said:
Finally, it appears to us that the change of plea by the appellant and the dismissal of the kidnapping charge by the state are inextricably bound up in one and the same transaction; and that, in benefiting *121 from setting the arrangement at naught, the appellant must accept the burden of any disadvantages that may accrue from setting it aside. Under the circumstances here, this is fair play and justice to the appellant as well as to society. In other words, in according the appellant the right to plead not guilty and to have his case passed upon by a jury, we think it is quite reasonable and not unfair to him for the state to have a somewhat comparable or resulting right to press the kidnapping charge again, as well as the assault charge, and to have a jury pass upon the question of appellant's guilt or innocence. The end result of this is that the appellant will have an opportunity to start all over in defending himself against the state's charges. We see no valid reason why the state should be less privileged as to a new start in pressing the charges. [261 P.2d at 405-406]
We are in thorough accord with the views thus expressed. If a bargained guilty plea is set aside, the defendant should not emerge free of the collaterally dismissed charges but only of his bargain. Implicitly in accord: Munich v. United States, 337 F.2d 356, 361 (9 Cir.1964); United States v. Wells, 430 F.2d 225, 230 (9 Cir.1970); People v. Baron, 264 N.E.2d 423, 425 (Ill. App. 1970); State v. Myers, 12 Ariz. App. 409, 471 P.2d 294, 295 (Ct. App. 1970); State v. Brown, 9 Ariz. App. 323, 451 P.2d 901, 904 (Ct. App. 1969).
The judgment denying post-conviction relief is reversed, as are the conviction, sentence and plea of guilty on the count of carnal abuse. The dismissal of the count of impairment of morals is also set aside and the count herewith reinstated. The indictment is returned for prompt trial on both counts, without prejudice, however, as to any motion for change in plea on either count the defendant may desire to make in lieu of trial thereof.
NOTES
[1] Note that R. 3:9-2, now in effect, states that the court shall not accept a plea of guilty until by direct inquiry of the defendant (and others, in the court's discretion) the court determines "that there is a factual basis for the plea." And see McCarthy v. United States, 394 U.S. 459, 466-467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).