289 N.J. Super. 61 (1996)
672 A.2d 1264
STATE OF NEW JERSEY, PLAINTIFF/RESPONDENT,
v.
S.C., DEFENDANT/APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 1995.
Decided March 25, 1996.
*63 Before Judges STERN, WALLACE and NEWMAN.
Joan Van Pelt, Deputy Public Defender, argued the cause for appellant (Susan L. Reisner, Public Defender, attorney; Edward P. Hannigan, Assistant Deputy Public Defender, of counsel and on the brief).
Paul H. Heinzel, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General of the State of New Jersey, attorney; Mr. Heinzel, of counsel and on the brief).
The opinion of the court was delivered by WALLACE, J.A.D.
*64 Defendant was indicted for the murder of E.N., contrary to N.J.S.A. 2C:11-3a(1) and/or (2) (count one); distribution of cocaine to a minor, contrary to N.J.S.A. 2C:35-5a(1) and 2C:35-8 (count two); and endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4a (count three). In a separate indictment, defendant was charged with possession of heroin, contrary to N.J.S.A. 2C:35-10a(1). Defendant entered into a plea agreement with the State. In accordance with the plea agreement defendant pled guilty to aggravated manslaughter, a lesser included offense of murder, and possession of heroin. He also pled guilty to an accusation charging him with employment of a juvenile in a drug distribution scheme, contrary to N.J.S.A. 2C:35-6. The State, for its part of the agreement, recommended that counts two and three of the indictment be dismissed. The trial judge accepted defendant's pleas, and imposed a thirty year term of imprisonment with fifteen years of parole ineligibility for the manslaughter charge, a concurrent five year term for the possession of heroin charge, and a consecutive ten-year term with five years of parole ineligibility for employing a juvenile in a drug distribution scheme. Defendant's aggregate sentence was forty years in prison with twenty years of parole ineligibility. The remaining counts were dismissed.
Defendant filed a notice of appeal and the matter was placed on our sentencing calendar pursuant to R. 2:9-11. Following argument, we requested that the issues raised be fully briefed.
On appeal, defendant essentially claims: (1) there was an insufficient factual basis for the plea to using a juvenile in a drug distribution scheme; (2) the remaining sentences imposed cannot be disturbed without violating principles of double jeopardy; and (3) the sentence was excessive. We find no basis to disturb defendant's guilty plea and sentence.
It is not necessary to set forth the facts in detail. Briefly, on September 25, 1991, defendant took three year old E.N., his fiancee's son, with him on a trip from their home in Milton, Delaware to New Jersey and New York. Defendant took the trip *65 to purchase heroin in New York for his personal use and for the use of his fiancee upon his return to Delaware. During the trip defendant purchased and consumed heroin in New Jersey and New York. Defendant and E.N. stayed with defendant's family in Irvington one night, spent several nights in various motels, and stayed at least one night in defendant's car. He disciplined E.N. by hitting him, sometimes with his hand or fist. According to defendant, he beat E.N. because he "was angry [that E.N.] kept messing up his clothes, messing on himself and messing on the floor in the motel room." Defendant acknowledged that by mistreating E.N. in this manner, he was creating a "substantial risk of causing him harm or death...." On the final night of E.N.'s life, defendant beat E.N., who then "messed" his pants again. Defendant washed E.N. and put him to bed. E.N. began vomiting. Defendant merely placed the covers over E.N. and sat on the foot of the bed. The next morning E.N. did not respond when defendant tried to wake him. Defendant drove to his mother's house and told his mother and sister that he thought E.N. was dead. Defendant's sister returned to the motel with him where she confirmed that E.N. was dead. The police were contacted and defendant was arrested.
Defendant contends that his conviction and sentence for employing a juvenile in a drug distribution scheme must be vacated because there was not an adequate factual basis to support his guilty plea to the charge. The State disputes this contention and cites R. 3:9-3(f) in support of its argument that defendant's unconditional guilty plea bars him from raising the claim.
Initially, we are satisfied that defendant may challenge this conviction despite his failure to enter a conditional plea pursuant to R. 3:9-3(f), or otherwise move to dismiss the accusation. The challenge to the existence of a factual basis for a plea is not waived by a guilty plea. See State v. Lightner, 99 N.J. 313, 315-16, 491 A.2d 1273 (1985); State v. Butler, 89 N.J. 220, 224, 445 A.2d 399 (1982).
*66 At the plea hearing, defendant gave the following sworn testimony that formed the basis of his plea of guilty to employing a juvenile in a drug distribution scheme:
THE COURT: All right. Let us go to the employing a juvenile in a drug distribution scheme.
Q. Mr. [C], referring back to your statement with regard to picking up [E.N.] in Delaware and bringing him into New Jersey. Did there come a point in time from September the 25th through September the 30th that you drove into New York and you purchased an amount of narcotics?
A. Yes, ma'am.
Q. And, in fact, you purchased what you understood to be heroin; is that right?
A. Yes, ma'am.
Q. And you bought several decks of heroin; is that right?
A. Several bundles.
Q. Several bundles of heroin. Mr. [C], at some point in time, is it true you were then going to return to Delaware so that you and [S.N.] would be able to use drugs?
A. Yes, ma'am.
Q. And the purpose of having [E.N.] in the car at that time, was it so that the police would not stop you along the highway, seeing [you] had a small child in the car?
A. Yes, ma'am.
Q. And [E.N.] was placed in the car for that purpose?
A. Yes, ma'am.
Q. So that you could go buy the drugs and then bring them down to [S.N.]?
A. Yes, ma'am.
THE COURT: Mr. Kolano, any questions in that regard?
EXAMINATION BY MR. KOLANO:
Q. When you returned to Delaware you were going to share the drugs you had purchased with [S.N.]?
A. Yes, sir.
Defendant contends that he did not "use" E.N. to facilitate the distribution of drugs and that the passive presence of a child does not meet the active role in the scheme that the legislature intended. Further, he contends that a three year old is not within the class of children protected by N.J.S.A. 2C:35-6 as demonstrated by the legislature's use of the term juvenile rather than a word such as minor. Finally, defendant contends that there was no evidence of a drug distribution scheme.
*67 N.J.S.A. 2C:35-6, Employing a juvenile in a drug distribution scheme, provides in pertinent part:
Any person being at least 18 years of age who knowingly uses, solicits, directs, hires or employs a person 17 years of age or younger to violate N.J.S. 2C:35-4 or subsection a. of N.J.S. 2C:35-5, is guilty of a crime of the second degree ...
It shall be no defense to a prosecution under this section that the actor mistakenly believed that the person which the actor used, solicited, directed, hired or employed was 18 years of age or older, even if such mistaken belief was reasonable.
Defendant urges that the presence of the word "uses" in the statute makes it ambiguous. He argues that the other verbs "solicits, directs, hires or employs" all signify some active participation by the juvenile and that the juvenile must do something which "if he possessed guilty knowledge" would constitute a violation of N.J.S.A. 2C:35-5a or 2C:35-4. Therefore, defendant concludes that since the four other verbs are all active, the Legislature must have intended the juvenile to play an active role, rather than merely a passive one in the violation of N.J.S.A. 2C:35-4 or N.J.S.A. 2C:35-5a.
The State argues that courts have not hesitated to give "use" a broad interpretation consistent with its ordinary meaning and cites Smith v. United States, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), in support of its argument. Smith held that the exchange of a gun for narcotics constituted the "use" of a firearm "during and in relation to ... [a] drug trafficking crime" within the meaning of 18 U.S.C.A. § 924(c)(1). Id. at 229, 113 S.Ct. at 2054. The Court rejected the argument that Congress intended the statute to apply only when a firearm is used as a weapon. Ibid.; cf. Bailey v. United States, 516 U.S. ___, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (use denotes active employment under § 924(c)(1) and a firearm inside a bag in a locked car trunk is not an active use of the firearm).
We reject defendant's interpretation of the word "use" in N.J.S.A. 2C:35-6 and agree with the State's contention that the word "use" is to be given a broad interpretation consistent with its ordinary meaning. First, we find no ambiguity in the statute as *68 the statutory language is clear. Thus, we must "enforce [the language] according to its terms." State v. Maguire, 84 N.J. 508, 528, 423 A.2d 294 (1980). "Absent any explicit indications of specific meanings, the words used in a statute carry their ordinary and well-understood meanings." State v. Mortimer, 135 N.J. 517, 532, 641 A.2d 257 (1994), cert. denied, ___ U.S. ___, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994); State v. Afanador, 134 N.J. 162, 171, 631 A.2d 946 (1993). Webster's Third New International Dictionary 2523-24 (16th ed. 1971), defines the verb "to use" as "to put into action or service; ... employ" or "to carry out a purpose or action by means of; make instrumental to an end or process; apply to advantage; turn to account; utilize." As such, the word "use" has a broad meaning.
The official commentary to the Comprehensive Drug Reform Act of 1986, L. 1987, c. 106, adopted July 1987, states the following as the legislative intent for the adoption of N.J.S.A 2C:35-6:
This section specifically prohibits an adult from using or employing a juvenile in a scheme to illegally manufacture or distribute controlled substances. In many cases, drug traffickers use children to infiltrate schools and playgrounds. These children are used to distribute drugs to their schoolmates, and essentially become intermediaries between adult drug dealers and juvenile users. This section, which creates an offense similar to those previously set forth at N.J.S.A. 2A:96-5 and 96-5.1, provides that any adult who uses children in any way to facilitate the distribution of drugs is guilty of a second degree crime. Because this offense focuses on the dangers posed by the insidious act of employing children in any drug distribution scheme, the degree of the offense does not depend on the nature, quantity or purity of the controlled substance involved. Unlike current provisions in Title 2A, moreover, punishment for this offense does not depend on whether the adult defendant is an addict, since this chapter contains other provisions with respect to sentencing alternatives which are available for certain drug dependent persons.
[9 Criminal Justice Quarterly 149, 156 (Fall 1987) (Emphasis added).]
The commentary indicates that N.J.S.A. 2C:35-6 "creates an offense similar to those previously set forth at N.J.S.A. 2A:96-5 and 96-5.1...." If this alone were considered, defendant's argument that he cannot be charged under 2C:35-6 because he was not using E.N. to "infiltrate schools and playgrounds," "distribute drugs," "become [an] intermediar[y] between adult drug dealers and juvenile users," or the like, might have some appeal. Those *69 sections, the former dealing with the conduct of an addict and the latter with a non-addict, provided:
A person ... who hires, employs or uses any child under the age of 18 years to transport, carry, sell, prepare for sale or offer for sale any of such drugs for any unlawful purpose, is guilty of a high misdemeanor....
[Ibid.]
The language of those statutes required some action or conduct by the juvenile, as distinct from N.J.S.A. 2C:35-6 which relates only to the conduct of the adult offender. The distinction is significant because it shows that the Legislature had previously, and could have again if it so chose, used language which required knowing conduct or involvement by the juvenile. Moreover, the commentary also provides "that any adult who uses children in any way to facilitate the distribution of drugs is guilty of a second degree crime." Ibid. The focus of the statute, as evident by the commentary, is directed to the "dangers posed by the insidious act of employing children in any drug distribution scheme...." Ibid.
In the present case, the child was quite visible in the car and was used by the defendant to reduce the chances that he would be stopped by the police. In our view, by employing the word "use", the Legislature intended that the statute cover the conduct of a defendant, where, such as here, the child was used to ward off detection of criminal activity. The dangers to which the child are exposed are the same. Consequently, the plain language employed by the Legislature must control resolution of the issue before us. See State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989); Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987). Simply put, defendant may not use a child "in any way to facilitate the distribution of drugs." See Cannel, New Jersey Criminal Code Annotated, comment on N.J.S.A. 2C:35-6 (1995).
Further, we find no justification to restrict the language based on the child's young age. As the 1987 Legislative Commentary makes clear, the statute is designed to protect all children. See Cannel, supra. The plain words of the statute follow this purpose by providing that it is the use of "a person 17 years of age *70 or younger" that is a necessary element. It is not the intent of the child, but the intent of the adult in using the child and the exposing of the child to danger, that the statute attempts to discourage by the enhanced penalty. See N.J.S.A. 2C:35-6. Thus, the child's age should be of no significance.
We also reject defendant's contention that there was no evidence of a drug distribution scheme. Defendant testified that one of his purposes in purchasing the drugs was to share them with his fiancee in Delaware. That is sufficient to meet the element of a drug distribution scheme. See State v. Heitzman, 209 N.J. Super. 617, 620-21, 508 A.2d 1161 (App.Div. 1986), aff'd, 107 N.J. 603, 527 A.2d 439 (1987) (defendant's admission that in addition to personal use, he intended to share the marijuana with friends was adequate basis for charge of possession with intent to distribute).
Finally, the sentence imposed was unexceptionable. Defendant challenges only the consecutive nature of his sentence for employing a juvenile in a drug distribution scheme. He urges that his violation of that statute was a nominal one and that he does not deserve a consecutive sentence which mandates the imposition of a five year parole disqualification. We disagree.
Defendant pled guilty to three offenses that occurred over a period of one week. The manslaughter charge and the employing a juvenile in a drug distribution scheme charge were clearly separate offenses independent of one another, and committed at different times. While the crimes did not involve multiple victims, defendant pled guilty to three offenses. Although the trial judge did not expressly articulate the reasons for imposing consecutive sentences, the consecutive sentences are consistent with the guidelines adopted by the Supreme Court in State v. Yarbough, 100 N.J. 627, 498 A.2d 1239 (1985), cert. denied, 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986).
Just as important, the sentence imposed was pursuant to a plea agreement. Defendant faced a murder indictment with the possibility *71 of a mandatory parole ineligibility term of thirty years upon conviction. In exchange for defendant's guilty pleas to the charges as noted, the State agreed to dismiss the remaining counts and to recommend a consecutive sentence which would aggregate forty years, with twenty years of parole disqualification. Consequently, the negotiated agreement reduced defendant's exposure from the possibility of life imprisonment with thirty years before parole eligibility on the murder, together with the possibility of a consecutive sentence at least for the independent heroin charge.
The plea agreement can appropriately be considered and weighed in the decision to impose consecutive sentences. See State v. Balfour, 135 N.J. 30, 37-40, 637 A.2d 1249 (1994) (plea agreement may be used and weighed as a material factor in the decision to downgrade). As the Supreme Court has noted, "[p]lea bargaining has become institutionalized as a legitimate, respectable, and practical tool in the efficient and fair administration of criminal justice." State v. Barboza, 115 N.J. 415, 420, 558 A.2d 1303 (1989). While the sentence imposed must be a lawful one, the court's decision to impose a sentence in accordance with the plea agreement should be given great respect, since a "presumption of reasonableness ... attaches to criminal sentences imposed on plea bargain defendants." State v. Sainz, 107 N.J. 283, 294, 526 A.2d 1015 (1987).
We find no abuse of the sentencing court's discretionary power. The sentence imposed was not excessive.
Affirmed.
STERN, J.A.D., concurring.
Defendant argues that his plea to employing a juvenile in a drug distribution scheme must be vacated. He also contends that the concurrent sentences imposed on the other offenses to which he pled guilty must stand and that the charges dismissed incident to the negotiated disposition may not be resurrected. I do not *72 believe that defendant would be entitled to the relief he seeks even in the absence of a factual basis for his plea.
As the majority points out, defendant was indicted for murder, distribution of cocaine to a minor, and endangering the welfare of a child in one indictment, and was charged with possession of heroin on a separate day in another. Following plea discussions, defendant entered into a negotiated disposition with the prosecutor. As a result defendant pled guilty to the accusation charging him with employment of a juvenile in a drug distribution scheme and to aggravated manslaughter as a lesser offense to murder and to possession of heroin, as charged in the indictments. Under the negotiated disposition, the remaining charges were to be dismissed. The State further recommended that the sentence on the heroin charge be made concurrent with the other terms and that defendant receive a maximum custodial sentence of forty years with twenty years before parole eligibility on the other offenses. In other words, defendant entered into a negotiated disposition which considerably reduced his sentence exposure. He was sentenced in accordance with the negotiated disposition.
If defendant prevails on his claim of an inadequate factual basis, it seems to me in these circumstances that the plea must be rejected and all charges resurrected. See State v. Barboza, 115 N.J. 415, 420, 558 A.2d 1303 (1989); State v. Rhein, 117 N.J. Super. 112, 283 A.2d 759 (App.Div. 1971). It is true (as defendant argues) that in State v. Lightner, 99 N.J. 313, 491 A.2d 1273 (1985), the Supreme Court held  based on "the singular facts of the case," 99 N.J. at 316, 491 A.2d 1273  that the State could not resurrect charges dismissed as part of a negotiated plea when there was an inadequate factual basis to sustain one of the two counts to which defendant pled guilty and defendant had fully executed the sentence imposed on the other. In that case the Supreme Court held that under the circumstances this court correctly determined that defendant's motion to withdraw the guilty plea to the offense should have been granted and remanded to permit vacation of the guilty plea. 99 N.J. at 316-17, 491 A.2d *73 1273. However, the Supreme Court did not hold that defendant could not be tried for the offense on which the plea was being vacated, as would be the consequence here.
In Barboza, where there was no factual basis for the plea to aggravated manslaughter as a lesser offense to murder, defendant originally argued that she was entitled to withdraw her plea and later asserted that she had the right to have it downgraded on appellate review to an offense she had admitted on the record. The Supreme Court concluded "that if an appellate court subsequently determines that a plea has been accepted without an adequate factual basis, the plea, the judgment of conviction, and the sentence must be vacated, the dismissed charges reinstated, and defendant allowed to re-plead or to proceed to trial." 115 N.J. at 420, 558 A.2d 1303. Citing Lightner, supra, the Barboza Court stated that "[m]ost New Jersey appellate courts, finding an insufficient factual basis to support a guilty plea, have simply vacated the conviction and allowed withdrawal of the guilty plea without any further discussion." Id. at 424, 558 A.2d 1303. The Court concluded that "[b]ecause there is an insufficient factual basis to support defendant's plea of aggravated manslaughter defendant may replead. Her conviction and sentence are vacated and the dismissed counts reinstated." Id. at 427, 558 A.2d 1303.
It is true that Barboza involved a one count indictment, or the plea to only one charge, and does not concern the resurrection of other charges, but its language is clear. In the context of a murder prosecution where the negotiated disposition was structured in such a way as to achieve a "real time" consequence (eliminating exposure to the thirty real years of parole ineligibility related to a murder conviction, see N.J.S.A. 2C:11-3b), all charges must be resurrected upon the withdrawal of the plea.
This case is not one involving a traditional claim of an insufficient factual basis for the plea. Defendant in essence claims he cannot be found guilty of the offense as alleged. Such a claim is traditionally addressed on a motion to dismiss the indictment. *74 But here defendant waived indictment and trial by jury and pled guilty to an accusation filed as part of the negotiated disposition.
Moreover, defendant has attacked the factual basis of his plea to the "employing a juvenile" charge without moving to withdraw his plea or seeking relief in the trial court. But see e.g., R. 3:21-1; State v. Smullen, 118 N.J. 408, 416-17, 571 A.2d 1305 (1990). And his appellate argument is premised on the belief that no dismissed charges could be resurrected and "the remaining sentences imposed cannot be disturbed without violation of the double jeopardy clauses of the Fifth Amendment [and] New Jersey Constitution." The absence of any motion in the trial court is of significance to me because the record does not suggest that defendant would be entitled to the relief he seeks even if he was permitted to withdraw his plea.[1] Rather, the record reflects that defendant entered a negotiated disposition, which took into account his intoxication and diminished capacity "defenses" and the "difficulty of proving" the distribution charge as alleged in the indictment (which defendant had unsuccessfully moved to dismiss), in exchange for a maximum sentence recommendation including a consecutive term for the offense defendant now seeks to have dismissed. He could have reasonably expected nothing less than the sentence imposed.
I do not believe a defendant can enter into a negotiated disposition to avoid a murder prosecution, advise the prosecutor of his "use" of a child in a drug distribution scheme as part of the disposition, enter pleas including that offense to reduce his criminal exposure, and then be able to withdraw one of the pleas on which the entire disposition was premised without resurrecting all *75 charges against him. As I understand defendant's argument, that is what he asks this court to permit, and I would reject that request.
I therefore concur in the judgment of the court.
NOTES
[1] It is arguable that, given his argument on this appeal, defendant had no expectation of finality in the concurrent sentences imposed and that he can, therefore, be resentenced on the surviving convictions. See State v. Haliski, 140 N.J. 1, 656 A.2d 1246 (1995). See also State v. Rodriguez, 97 N.J. 263, 478 A.2d 408 (1984). But given the maximum sentence imposed on the aggravated manslaughter and the third degree heroin conviction, the same aggregate sentence could not be achieved.