727 A.2d 97 (1999)
320 N.J. Super. 332
STATE of New Jersey, Plaintiff-Respondent,
v.
George J. GARCIA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 24, 1999.
Decided April 21, 1999.
*98 Steven Robert Lehr, Fairfield, for defendant-appellant (Elliott Joffe, Hackensack, of counsel and on the brief).
William H. Schmidt, Bergen County Prosecutor, for plaintiff-respondent (Annmarie Cozzi, Assistant Prosecutor, of counsel and on the brief).
Before Judges CONLEY and LEFELT.
The opinion of the court was delivered by LEFELT, J.S.C. (temporarily assigned).
George Garcia has been indefinitely incarcerated in the Mercer County Correctional Center because Cuba does not accept deported aliens from America. Garcia appeals from the denial of his Post Conviction Relief (PCR) application to set aside his guilty plea, which had been the cause of his deportation. Garcia claims that his PCR application should have been granted because he was denied effective assistance of counsel when his lawyer inaccurately advised him that he would not be deported if he pled guilty. Alternatively, he argues that he should have been granted a hearing to explore whether his defense attorney improperly advised him about the deportation consequences of pleading guilty. We vacate the order denying post conviction relief and remand for a hearing on whether Garcia was denied effective assistance of counsel.
Garcia came to this country when he was 6 years old. He graduated from high school in New Jersey, has a social security number and an employment record in this State. He speaks English fluently without any accent. He had anglicized his name from Jorge to George, but he was a permanent resident alien and not a citizen.
On July 5, 1994, Garcia pled guilty to third degree possession of cocaine on or near school property, in violation of N.J.S.A. 2C:35-7; second degree possession of cocaine, in violation of N.J.S.A. 2C:35-5a(1)b(2); fourth degree attempt to commit theft by unlawful taking, in violation of N.J.S.A. 2C:5-1 and N.J.S.A. 2C:20-3; third degree possession of cocaine, in violation of N.J.S.A. 2C:35-10a(1); and third degree burglary, in violation of N.J.S.A. 2C:18-2.
He was sentenced on September 16, 1994, pursuant to a plea bargain, to an aggregated eleven years in prison (one year less than the plea bargain) with three years of parole ineligibility. On August 27, 1995, while Garcia was in prison, he filed a pro se motion for reconsideration of his sentence, seeking entry into an in-patient drug treatment program. *99 This motion was denied on December 4, 1995.
Garcia was paroled from New Jersey State Prison in the summer of 1997. Before he was released, however, the Immigration and Naturalization Service (INS) served him with removal papers and took him into custody.
On December 9, 1997, Garcia filed a verified petition for Post Conviction Relief. Thereafter, the PCR judge on February 23, 1998 denied Garcia's application. On the same date, INS ordered Garcia removed from this country and returned to the nation of his origin. Because Cuba does not accept deported aliens from this country, however, Garcia remains incarcerated indefinitely at the Mercer County Correctional Center.
The plea form which Garcia initialed contained the following question number 17: "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?" This question was answered "N/A." Garcia asserts that his defense attorney advised him that despite his status in this country, he would not be subject to deportation and that's why "N/A" was circled on the plea form.
Garcia's defense attorney certified that he had "very little specific recollection of discussions" with Garcia about the plea form. He indicated that it was his practice to ask defendants whether they are citizens. If any defendant answers that he or she is not a citizen, he customarily circles "yes" on the plea form. He further certified that "[a]lthough it is difficult to recall, I am confident based on what I do recall, Mr. Garcia never expressed that he was an illegal Cuban refugee." Because "N/A" was circled on the form, the defense attorney believed that Garcia told him "that he was a citizen."
In State v. Reid, 148 N.J.Super. 263, 372 A.2d 626 (App.Div.1977), certif. denied, 75 N.J. 520, 384 A.2d 500 (1977), this court refused to vacate a guilty plea solely because a defendant lacked understanding of the deportation consequences of his plea. Post plea deportation consequences were believed to be collateral and unrelated to the penal consequences of any plea. In State v. Chung, 210 N.J.Super. 427, 433, 510 A.2d 72 (App.Div.1986) we observed that "it is not the present responsibility of a New Jersey judge to advise a defendant of federal deportation consequences at the time of the taking of the guilty plea."
In State v. Heitzman, 107 N.J. 603, 604, 527 A.2d 439 (1987) quoting State v. Heitzman, 209 N.J.Super. 617, 622, 508 A.2d 1161 (App.Div.1986), aff'd, 107 N.J. 603, 527 A.2d 439 (1987)), the Supreme Court affirmed substantially on the basis of the majority opinion in the Appellate Division and quoted our holding that "defendant need be informed only of the penal consequences of his plea and not the collateral consequences, such as loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, or anything else."
Chief Justice Wilentz argued in dissent in Heitzman that judges should disclose to defendants any consequences that are "generally known and substantially adverse." Id. at 607, 527 A.2d 439. His dissent also suggested that the plea form then in use be modified to include the "consequence of potential deportation." Id. at 608 n. 1, 527 A.2d 439.
The plea form which is used currently to accept guilty pleas, and, as explained above, was used by Garcia, contains question 17, which addresses deportation consequences. While we have thus modified the plea form in accordance with the Chief Justice's position, our law remains unchanged. Judges need not advise defendants of any collateral consequences that may ensue from a guilty plea.
One must initially wonder whether the consequences that befell Garcia in this case can be disregarded solely because they are collateral. Garcia has not been returned to Cuba, but instead has been incarcerated. Should it matter whether this penal consequence resulted directly or indirectly from his guilty plea? Chief Justice Wilentz, in his dissent in Heitzman, observed that "[i]t matters little if the consequences are called indirect or collateral *100 when in fact their impact is devastating." Id. at 606, 527 A.2d 439.
Given its text, question 17 in the plea form appears designed, in part, to prevent misleading alien defendants by not discussing deportation. The question advises non citizens that they may be deported if they plead guilty. Thus, the plea form reflects a concern about misleading alien defendants by silence and is designed to encourage discussion between counsel and client on this issue. However, aliens can also be misled if they are provided wrong deportation information.
Chung, supra, 210 N.J.Super. at 427, 510 A.2d 72 did not involve misinformation about deportation. Chung was not claiming that his counsel supplied him with erroneous deportation information. Chung's lawyer advised him that his immigration status could be "sticky." We, therefore, concluded in that case that Chung was "aware of possible immigration problems." Id. at 435, 510 A.2d 72.
Chung, however, recognized the importance of providing a defendant with accurate and truthful information during the plea process. To comport with due process, a guilty plea must be both voluntary and knowing. State v. Rhein, 117 N.J.Super. 112, 118, 283 A.2d 759 (App.Div.1971).
In this case, Garcia claims he had inadequate assistance of counsel because of misinformation provided to him concerning whether deportation was possible if he pled guilty. However, the PCR judge, without holding a hearing, decided that Garcia did not have inadequate assistance of counsel.
After reviewing the documents that had been submitted, the PCR judge concluded that Garcia's defense attorney did not advise Garcia of the immigration consequences of his plea. "No mention was made at all about the subject of deportation." The judge believed that the "N/A" answer to question 17 on the plea form indicated that Garcia "did not confide his true immigrant status" with his defense attorney. Therefore, the PCR judge believed that "there was no misinformation or misadvise given."
In State v. Preciose, 129 N.J. 451, 462, 609 A.2d 1280 (1992) the Supreme Court advises that "trial courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of post-conviction relief."
R. 3:22-10 provides that for post conviction relief applications, "[a] defendant in custody may be present in court in the court's discretion and shall be entitled to be present when oral testimony is adduced on a material issue of fact within the defendant's personal knowledge." In "determining the propriety of an evidentiary hearing, the PCR court should ascertain whether the defendant would be entitled to post-conviction relief if the facts were viewed in the light most favorable to defendant." State v. Marshall, 148 N.J. 89, 158, 690 A.2d 1 (1997).
A defense attorney during the plea process can provide inadequate assistance by misinforming his or her client. In People v. Correa, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1985) the court found ineffective assistance of counsel where an attorney misinformed a defendant that his guilty plea would likely not result in deportation. Misstatements regarding the availability and or effectiveness of judicial recommendations against deportation have been held to constitute ineffective assistance of counsel. U.S. v. Mora-Gomez, 875 F.Supp. 1208, 1212 (E.D.Va.1995); U.S. v. Castro, 26 F.3d. 557 (5th Cir.1994).
Guilty pleas can be vacated because of misinformation received during the plea process. In State v. Nichols, 71 N.J. 358, 361, 365 A.2d 467 (1976) the defendant was permitted to vacate his plea where the court, prosecutor and defense counsel misinformed defendant as to his possible sentence. In Morales v. Texas, 910 S.W.2d 642, 646 (Tex.Ct.App.1995) defendant's guilty plea was vacated and her counsel's assistance found ineffective. In Morales, counsel provided erroneous advice about defendant's possible sentence and failed to inform defendant of the deportation consequences associated with her guilty plea. In State v. Rhein, supra, at 118, 283 A.2d 759 (App.Div.1971) a guilty plea was voided because defendant's assigned counsel provided erroneous advice as to the elements of the crime defendant was charged with violating.
*101 In O'Tuel v. Osborne, 706 F.2d 498, 501 (4th Cir.1983) a guilty plea was vacated because defendant's lawyer improperly advised him about parole eligibility. In Strader v. Garrison, 611 F.2d 61 (4th Cir.1979) habeas corpus was granted because an attorney misadvised a defendant concerning the effect of a new sentence on his parole eligibility date. Significantly, Strader stated that "[h]ere, though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel." Id. at 65.
In United States ex rel. Hill v. Ternullo, 510 F.2d 844 (2nd Cir.1975) a habeas corpus hearing was granted on the issue of whether defendant had been misinformed by his attorney concerning a possible maximum sentence. In United States v. Russell, 686 F.2d 35, 41 (D.C.Cir.1982) the court vacated a guilty plea because the prosecutor at the time of the plea, had made misleading statements concerning possible deportation. In Hammond v. United States, 528 F.2d 15 (4th Cir.1975) it was held that a guilty plea was constitutionally involuntary because it was tendered upon advice that the defendant faced maximum sentences aggregating some forty years more than defendant actually faced.
Since the "N/A" answer to question 17 supported Garcia's position, we believe that a prima facie case of misinformation had been established. If Garcia's contention is credited, his attorney's misinformation not only misled Garcia about the possible deportation consequences of his guilty plea, but also indirectly resulted in lengthening the period of Garcia's incarceration.
In order to interpret the answer to question 17 the way the PCR judge did, he had to reject Garcia's verified complaint and accept counsel's certification. Thus, stated differently, the PCR judge found on the basis of the papers that Garcia must have lied to his attorney and that, therefore, no misinformation was provided Garcia. But, the form on its face supported Garcia's claimthat his lawyer told him that even though he was an alien, he could not be deported and that, therefore, question 17 was not applicable. Thus, in our view, the PCR judge should not have denied the application without a hearing.
For "a trial court to decide contested issues of material fact on the basis of conflicting affidavits, without considering the demeanor of witnesses, is contrary to fundamental principles of our legal practice." Conforti v. Guliadis, 245 N.J.Super. 561, 565, 586 A.2d 318 (App.Div.1991), aff'd, as modified, 128 N.J. 318, 322-23, 608 A.2d 225 (1992).
Therefore, in this case, the PCR judge should have held a hearing to resolve whether misinformation was provided Garcia about deportation and if so whether counsel's conduct "was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985), quoting McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). See also, Tollett v. Henderson, 411 U.S. 258, 266, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973).
Furthermore, the court at the hearing should explore whether "there is reasonable probability that, but for counsel's error, [Garcia] would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, supra, 474 U.S. at 59, 106 S.Ct. at 370, 88 L.Ed.2d at 210.
The prosecutor argues that, even if Garcia had been properly advised concerning deportation, he probably would have pleaded guilty anyway because Garcia had become a "born again Christian." However, Garcia's deportation under the circumstances of this case, has, in effect, converted his eleven year sentence to life, possibly without parole unless INS or Cuba modifies its deportation policies. Accordingly, there is at least a question raised concerning whether Garcia would have pled guilty had he understood this possible consequence.
We take no position on the merits of such an ineffective assistance of counsel hearing. Nor do we address what relief may be appropriate should inadequate assistance of counsel be found.
Accordingly, we vacate the order denying post conviction relief and remand for a hearing *102 consistent with this decision. We do not retain jurisdiction.