<div style="border:1px solid">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2546-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NANCY NUNEZ,

    Defendant-Appellant.

_____

Submitted August 21, 2018 — Decided August 27, 2018

Before Judges Messano and Geiger.

On appeal from Superior Court of New Jersey, Law Division, Union County, Accusation No. 98-10-1280 and Indictment No. 99-02-0148.

Joseph E. Krakora, Public Defender, attorney for appellant (Rochelle Watson, Assistant Deputy Public Defender, of counsel and on the briefs).

Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

On October 8, 1998, defendant Nancy Nunez pled guilty to a one-count accusation charging her with third-degree distribution of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-5(a)(1). On March 29, 1999, defendant pled guilty to both counts of Union County Indictment No. 99-02-0148, charging her with third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1), and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a). On the same day, the court sentenced defendant, a legal permanent resident of the United States at the time, on her guilty plea to the indictment to a four-year term of probation, a specific condition of which was enrollment in and successful completion of Drug Court. On April 23, 1999, the judge imposed the same sentence to run concurrently on the guilty plea to the accusation.

Nearly twenty years later, on January 12, 2017, after she was arrested in Pennsylvania and was in the custody of United States Immigration and Customs Enforcement (ICE) facing possible deportation, defendant moved to vacate her guilty pleas pursuant to State v. Slater, 198 N.J. 145 (2009).[1] In addition, as to her guilty plea to the accusation, defendant argued that the court

---

[1] Defense counsel explained in her motion brief that defendant, born in Cuba, did not face deportation to that nation. However, defendant would lose her legal status and the benefits that afforded her and would remain "deportable if at any future time the United States beg[an] deporting people to Cuba."

failed to comply with Rule 3:9-2. See ibid. (providing, among other things, that the court "shall not accept [a guilty] plea without first questioning the defendant personally . . . and determining . . . that the plea is made voluntarily . . . and with an understanding of the nature of the charge and the consequences of the plea").

In an oral decision that followed argument, the motion judge, who was not the plea or sentencing judge, concluded that defendant's guilty plea to the accusation was "constitutionally defective." Specifically, defendant was amongst a group of co-defendants who the plea judge addressed en masse, not personally, and the judge failed to advise defendant of the full panoply of rights she was waiving by pleading guilty. However, after considering the four factors outlined by the Court in Slater, 198 N.J. at 157-58, the judge denied defendant's motion to withdraw her guilty pleas to the indictment. The judge entered a conforming order, and this appeal followed.

We listed the appeal originally on our Excessive Sentence Oral Argument (ESOA) calendar. However, shortly before the scheduled argument date, defense counsel supplied us with a three-page brief outlining an argument she intended to make, i.e., that defendant did not enter a knowing, voluntary and intelligent guilty plea to the indictment "because she was not advised that it was

certain to lead to her deportation." Counsel hastened to add that neither the Slater paradigm nor "the ineffective-assistance-of-counsel test in Strickland v. Washington, 466 U.S. 668, 687 (1984)," applied to the claim. Given the nature of the argument, we transferred the appeal to the plenary calendar and ordered the parties to brief the issue. They have.

Defendant raises a single point, that "because she was not advised that the guilty plea to third-degree drug possession was certain to lead to her deportation, [she] was denied due process and the plea must be vacated." We disagree and affirm.

Initially, we dispense with the State's contention that we should not consider the argument because defendant never raised the issue before the trial court. State v. Witt, 223 N.J. 409, 419 (2015). Although it was not defendant's primary argument, the letter brief submitted to the motion judge asserted that defendant would not have pled guilty to the indictment had she known of the "immigration consequences" of her guilty pleas.

When defendant entered her guilty pleas in 1998, the state of our jurisprudence was clear and unequivocal. A defendant need know only of the penal consequences of her guilty plea, not the collateral consequences "such as loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the

military, or anything else." State v. Heitzman, 209 N.J. Super. 617, 622 (App. Div. 1986) (emphasis added) (citation omitted), aff'd o.b., 107 N.J. 603, 604 (1987); see also State v. Chung, 210 N.J. Super. 427, 433 (App. Div. 1986) ("[I]t is not the present responsibility of a New Jersey judge to advise a defendant of federal deportation consequences at the time of the taking of the guilty plea.").

In State v. Garcia, 320 N.J. Super. 332 (App. Div. 1999), we held that ambiguity surrounding the defendant's answer to question #17 on the then-current plea form compelled an evidentiary hearing on his petition for post-conviction relief (PCR). Id. at 336, 340-41. Based on possible misinformation about the immigration consequences of his guilty plea, we concluded the defendant had presented a prima facie case of ineffective assistance of counsel. Id. at 341.

Here, defendant's answer to question #17 on the plea form — "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?" — was "Yes." Defendant cites to statements in her motion counsel's brief alleging there was no discussion of this with plea counsel. However, the record contains no such certification from defendant herself. Defendant cites to the transcript of her guilty plea, asserting it demonstrates insufficient inquiry by plea counsel or

the judge about her understanding of the immigration consequences of her pleas. However, the transcript reveals the judge specifically asked defendant if the answers on the plea form were her answers, and if they were accurate.

In any event, defendant does not argue that plea counsel provided ineffective assistance. Instead, she contends that despite the state of our jurisprudence at the time of her guilty pleas, the judge had the obligation to explain affirmatively that deportation was "virtually mandatory" as a result. Padilla v. Kentucky, 559 U.S. 356, 359 (2010).

We acknowledge that in State v. Nuñez-Valdéz, 200 N.J. 129 (2009), our Supreme Court rejected the penal-collateral consequence dichotomy and recognized that defense counsel provided ineffective assistance if he misinformed the defendant regarding the immigration consequences of a guilty plea. Id. at 138-41. The Court ordered further revision to question #17 on the plea form. Id. at 144.

The majority of the Padilla Court expanded defense counsel's obligation, holding an attorney must advise a client-defendant whenever a plea places him at risk of deportation. 559 U.S. at 373-74. However, in State v. Gaitan, our Supreme Court held Padilla did not apply retroactively, and that prior to Padilla, plea counsel did not have an affirmative obligation to advise

clients of "the mandatory deportation consequences of certain convictions." 209 N.J. 339, 375 (2012).

Defendant's essential argument is that these cases recognize a defendant's guilty plea does not comport with due process unless it is entered knowingly and voluntarily and with full knowledge of its immigration consequences. She contends that the judge has an obligation independent of defense counsel to assure compliance with Rule 3:9-2.

We have said that the judge's obligation to ensure a guilty plea is entered voluntarily and "with an understanding of the nature of the charge and the consequences of the plea," Rule 3:9-2, "is related to, but distinct from the attorney's obligation to render effective assistance." State v. Blake, 444 N.J. Super. 285, 297 (App. Div. 2016) (citing State v. Jamgochian, 363 N.J. Super. 220, 227 (App. Div. 2003)). In rejecting the defendant's PCR petition in Blake, a post-Padilla case, we recognized the judge adhered to the plea form adopted by the Court, ibid., although we specifically did not consider whether the judge was required to do more. Id. at 298 n.4.

In this case, defendant cites no authority supporting the proposition that in 1998 a trial judge was required to affirmatively advise a defendant of the immigration consequences of her guilty plea beyond that required by the plea form, or that

the failure to do so rendered the guilty plea non-compliant with Rule 3:9-2 and violated defendant's due process rights.  We decline the opportunity to hold so in the first instance.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION