760 A.2d 840 (2000)
334 N.J. Super. 681
STATE of New Jersey
v.
Antonio VIEIRA, Defendant.
Superior Court of New Jersey, Law Division (Criminal) Union County.
July 17, 2000.
*841 Casey Woodruff, Assistant Prosecutor, for the State (Thomas V. Manahan, Union County Prosecutor).
Thomas Walsh, Marlton, for defendant.
BARISONEK, J.S.C.
The defendant entered a plea of guilty to a third degree crime and was sentenced pursuant to the plea agreement. The defendant, after completion of his sentence, decided to travel abroad. When he returned to the United States, he was detained as a resident alien for deportation purposes due to the above conviction. The defendant then filed a post-conviction relief application seeking to withdraw from his plea agreement. The defendant alleged that he was never advised as to the consequent possibility of deportation and that his attorney was ineffective in her representation.
A factual hearing was conducted which disclosed that at the time of arrest, the defendant revealed that he was not a citizen of the United States, that he was born in Portugal and was a resident alien for over thirty years. This information was provided to the Criminal Division Manager's Office, the prosecution and to the defense attorney through the Uniform Defendant Intake Report. Testimony was also offered which showed that the defendant could understand English, but had difficulty reading and writing.
The prior defense attorney testified at the time of entry of the plea that she completed the plea form outside the presence of the defendant without going over each question with the defendant. The attorney assumed the defendant read the plea form because he initialed each page and signed the last page. The sister of the defendant, who was in court at the time the plea forms were completed, testified that the defendant did not read the forms, nor did anyone else read them to the defendant. When the plea form was completed by the attorney, question number 17, which deals with the deportation issue, was marked N/A, not applicable. When the attorney was asked why she circled "not applicable," she indicated that she did not know the defendant was a resident alien and faced deportation. The plea transcript showed that the defendant said he had difficulty reading and writing English, that his attorney read the plea form to him and that he understood it and signed it.
It was found, based on the attorney's testimony and the sister's testimony, that the defendant did not read the form, it was not read to him, and no one discussed deportation with the defendant.
In the seminal case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court announced a two-part test to determine whether a defendant received ineffective assistance of counsel. The Court, formulating the test, stated:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.
Id. at 687, 104 S.Ct. 2052.
The Court also explained that no specific test could be formulated to uncover whether counsel was deficient. The Court did note, however, that there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 688-89, 104 S.Ct. 2052. Further, the Court held concerning the second prong of the test, *842 that prejudice must be actually proved by showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. The Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." Id.
In United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the United States Supreme Court held that in some ineffective assistance of counsel cases, prejudice to the defendant may be presumed when there exists "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." See also State v. Davis, 116 N.J. 341, 351, 561 A.2d 1082 (1989) (noting an example of a case where the Cronic presumption would apply would be where defendant's counsel failed to cross-examine a key State's witness).
In State v. Fritz, 105 N.J. 42, 519 A.2d 336 (1987), the New Jersey Supreme Court adopted the Strickland and Cronic tests for determining whether a defendant has been denied the effective assistance of counsel. In addition, the Supreme Court of New Jersey in Davis, 116 N.J. at 351, 561 A.2d 1082, held that the standard for measuring effectiveness of counsel is a comparison to other attorneys in the field. The Court clarified this standard by stating:
Adequate assistance of an attorney is measured according to whether the counsel has professional skills comparable to other practitioners in the field. This has been equated with a standard of "reasonable competence." "Reasonable competence" does not require the best of attorneys, but certainly not one so ineffective as to make the idea of a fair trial meaningless.
Id.
Furthermore, a counselor's effectiveness is presumed. See State v. Martini, 131 N.J. 176, 322, 619 A.2d 1208 (1993). When an attorney makes a thorough investigation of both law and fact, an attorney's strategic choice is "virtually unchallengeable." See Davis, 116 N.J. at 357, 561 A.2d 1082. When counsel makes a strategic choice based on inadequate investigation, however, the strategic choice is robbed of its presumption of competence and must be judged on whether "reasonable professional judgments support the limitations on investigation." Id. (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052).
Here it is alleged that defense counsel's performance was deficient because she assumed the defendant read the plea form and assumed the defendant was a United States citizen and that but for counsel's ineffectiveness, the plea would not have been entered because of the deportation consequences.
Our courts have addressed the issue of deportation and held: "The effect of defendant's plea on his immigration status has been considered a collateral consequence." State v. Chung, 210 N.J.Super., 427, 431, 510 A.2d 72 (App.Div.1986) (citing State v. Reid, 148 N.J.Super. 263, 372 A.2d 626 (App.Div.), cert. denied, 75 N.J. 520, 384 A.2d 500 (1977)). "To be material a mistake must relate to the penal consequences of a plea. A mistake as to a collateral consequence, while it may have a significant effect upon a defendant, is not material." Chung, 210 N.J.Super. at 431, 510 A.2d 72 (quoting State v. Riggins, 191 N.J.Super. 352, 355, 466 A.2d 981 (Law Div.1983)). If "[t]he only reason advanced to justify vacation of the plea [is] defendant's lack of an understanding of the collateral consequences insofar as his immigration status [is] concerned, [s]uch a reason is not adequate since it does not relate to the penal consequences of the plea." Reid, 148 N.J.Super. at 266, 372 A.2d 626, (citing United States v. Parrino, 212 F.2d 919 (2d Cir.1954), cert. denied, 348 U.S. 840, 75 S.Ct. 46, 99 L.Ed. 663 (1954)).
*843 The collateral consequences issue was also addressed in State v. Heitzman, 107 N.J. 603, 527 A.2d 439 (1987), on the issue of forfeiture of public employment. The majority opinion held that forfeiture of public employment is a collateral consequence of a plea and the defendant need not be advised that he/she faces the loss of his/her employment status. The Court, however, did warn, "... a trial court would be well advised to inform a defendant of any collateral consequences of which the court may be aware, but failure to do so cannot be viewed as error requiring further proceedings that could lead to a vacating of the plea." Id. at 604, 527 A.2d 439. Chief Justice Wilentz wrote a dissenting opinion in Heitzman and said, "[W]hether to advise [a] defendant of a particular consequence should be determined by balancing the severity of the consequence against the judicial burden, if any, of requiring the court to tell defendant about it." Id. at 607, 527 A.2d 439 (Wilentz, C.J., dissenting).
A New Jersey judge is not required to advise a defendant of federal deportation consequences when a plea of guilty is entered. See Chung, 210 N.J.Super. at 433, 510 A.2d 72. Other states have held that deportation is a cognizable serious consequence, but New Jersey has not yet followed that line of reasoning. See id. at 438-39, 510 A.2d 72.
Where a defendant was supplied erroneous information by counsel, however, courts including New Jersey, have allowed defendants to withdraw guilty pleas. See State v. Nichols, 71 N.J. 358, 365 A.2d 467 (1976); United States v. Russell, 686 F.2d 35 (D.C.Cir.1982); Strader v. Garrison, 611 F.2d 61 (4th Cir.1979); People v. Correa, 108 Ill.2d 541, 92 Ill.Dec. 496, 485 N.E.2d 307 (1985). The court in Chung, held that the defendant did not meet the first requirement of the Strickland test because his defense counsel did not specifically advise him as to the immigration consequences of the plea. See Chung, 210 N.J.Super. at 434-35, 510 A.2d 72. Counsel, in that case, did notify Chung that his immigration status may become "sticky." See id. at 435, 510 A.2d 72. The Chung court, however, noted that Chung was aware that as a non-resident immigrant, he had illegal immigrant status and that he was aware of possible problems concerning immigration. See id. The court went on to stay that "[t]here was no actual misrepresentation by Chung's defense counsel and a claim of ineffective assistance cannot be supported on these facts." Id.
The defendant cites State v. Garcia, 320 N.J.Super. 332, 727 A.2d 97 (App.Div. 1999), in support of his motion. The deportation question in Garcia was similarly marked, but the attorney explained that "despite his status in this country, the defendant would not be subject to deportation and that's why "N/A" was circled on the plea form." Id. at 336, 727 A.2d 97. The Garcia court took "no position on the merits of such an ineffective assistance of counsel hearing," and remanded the case for a hearing. See id. at 341, 727 A.2d 97.
The defendant in these proceedings had disclosed to the Criminal Division Manager's Office that he was a resident alien and not a United States citizen, and both the defense attorney and the prosecutor had copies of that disclosure in their files. This knowledge in fairness, therefore, should be imputed to defense counsel. When you add to that, the fact that the defendant said during the taking of the plea that he had difficulty reading and writing English and the defense attorney knew she did not go over the plea form with the defendant, counsel is not effectively representing the interest of the defendant by circling "N/A" on the deportation question without further inquiry. While deportation may not be a penal consequence and counsel is not obligated to make specific inquiry as to the residency status of a defendant, when a defendant previously discloses that he is a resident alien, the knowledge is imputed to defense *844 counsel and the defendant discloses in open court that he has problems reading and writing English, counsel's performance is constitutionally deficient if the attorney does not address the issue of deportation with the defendant and the defendant is not aware of the risk of deportation.