[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By his petition filed August 18, 1999, petitioner seeks a writ of habeas corpus. The petition alleges that petitioner was deprived of CT Page 7087 effective assistance of counsel when his retained attorney erroneously informed him, prior to his guilty plea, that he would probably not be deported for the crimes for which he entered the guilty pleas. It is also claimed in the petition that petitioner was denied due process of law as guaranteed by the Fifteenth and Fourteenth Amendments to the United States Constitution and Article 1, Section 8 of the Connecticut Constitution because his guilty pleas were not knowing, voluntary and intelligent because he erroneously believed, through no fault of his own, that he would not be deported.
For reasons hereinafter stated, the petition is dismissed.
As a result of an incident which occurred at Vernon on September 29th, 1997, the petitioner was arrested and charged with possession of a controlled substance in violation of General Statutes Section 21a-279 (c); three counts of reckless endangerment in the first degree in violation of General Statutes Section 53a-63; three counts of assault in the second degree in violation of General Statutes Section 53a-60; two counts of assault in the third degree in violation of General Statutes Section53a-61; stalking in the second degree in violation of General Statutes Section 53a-181 (d); failure to appear in the first degree in violation of General Statutes Section 53a-172; reckless driving in violation of General Statutes Section 14-222 and evading responsibility in violation of General Statutes Section 14-224 (b). The matters came before the Court at G.A. 19 in Rockville.
Petitioner retained the services of Attorney David Thompson to represent him on these charges. Attorney Thompson was experienced in the representation of persons charged with crimes. He had known petitioner for 15 years and had represented him on criminal charges in the past.
Attorney Thompson, and his wife, a member of the same firm, undertook the defense of petitioner's case. It is petitioner's claim that because of Attorney Thompson's deficient performance, he was denied the effective assistance of counsel.
As a defendant in a criminal prosecution, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings; . . ." Copas v. Commissioner of Correction,234 Conn. 139, 153 (1995). (Citations omitted.) CT Page 7088
The general standard to be applied in habeas corpus proceedings to determine whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed. 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
Where as here petitioner entered a guilty plea, the standard enunciated in Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203
(1985), and quoted in Copas, supra, 234 Conn. 156-57, applies.
The right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction. Siemon v. Stoughton,184 Conn. 547, 556 (1981).
After being retained by petitioner, Attorney Thompson hired an investigator and commenced an investigation of the alleged criminal activity. Attorney Thompson was aware that petitioner had been born in Jamaica and was in the United States as a permanent resident alien.
Attorney Thompson and co-counsel engaged in plea negotiations with the state concerning petitioner's charges. During these negotiations, which lasted for several months, Thompson attempted to get the state to reduce the charges to less than class A misdemeanors. When the state refused, petitioner and his attorneys were left with the choice of going to trial CT Page 7089 on the felony charges or accepting the state's offer. On June 12, 1998, before the Honorable Terrence A. Sullivan, petitioner entered a plea of guilty under the Alford[1] doctrine to one count of reckless endangerment in the first degree, two counts of reckless endangerment in the first degree and one count of stalking in the second degree. The agreement called for a total effective sentence of four years, execution suspended after two years, with three years probation and the right to argue for less. All of the charges to which petitioner pled were class A misdemeanors. After a canvass, the pleas were found to be voluntary, accepted by the court, and petitioner found guilty.
The matters came before Judge Sullivan for sentencing on July 15, 1998. At that time, petitioner, being concerned about his immigration status, asked his attorney to request permission to withdraw his pleas of guilty because he did not understand "the legalities or the complications of the canvass". The judge stated that: "There's no evidence of that" and refused to allow petitioner to withdraw his plea. The court then imposed a total effective sentence of four years execution suspended after 14 months followed by two years of probation.
While petitioner was incarcerated[2] an immigration and naturalization service detainer were lodged against him. Subsequently, federal proceedings resulted in a decision by an immigration judge dated December 5, 2000. The judge found that petitioner had been convicted of stalking in the second degree and assault in the third degree and ordered that he be removed to Jamaica. This decision is now on appeal.
The petition alleges that petitioner was denied effective assistance of counsel when Attorney Thompson, erroneously informed him, prior to his guilty plea that he would probably not be deported upon conviction of class A misdemeanors.
The evidence indicates that petitioner and his attorney were aware of the immigration problem and that they discussed it on a number of occasions. Concern over deportation was the prime reason for Attorney Thompson attempting to have the charges reduced to less than class A misdemeanors. Petitioner testified that he would never plead guilty to a felony because that would result in automatic deportation. He also testified that when in Attorney Thompson's office, the attorney took some books off the shelf and looked them over. He then advised petitioner that if the charges were dropped from felonies to misdemeanors, it would be okay to plead because they were not deporting people for misdemeanor convictions.
Attorney Thompson's recollection of the advice given his client differs from that of petitioner. It was Attorney Thompson's testimony that during CT Page 7090 plea negotiations he was well aware that petitioner would be subject to deportation upon conviction of misdemeanor charges carrying a potential one-year jail sentence. This was the reason that he "pestered" the state's attorney in his unsuccessful effort to have him move from the class A misdemeanor charges. When they discussed acceptance of the final plea agreement, Attorney Thompson explained to petitioner that he and his wife were not immigration attorneys, but that the conviction of a class A misdemeanor could and would likely subject him to deportation.[3]
Petitioner was not informed by Attorney Thompson categorically that such a conviction would result in his expulsion from the country. He was, however, informed that the conviction would likely subject him to deportation.
Considering the credibility of the testimony, it must be found that Attorney Thompson's version of the advice given prior to the plea is more believable than petitioner and that petitioner entered his plea of guilty knowing that there was a probability that removal proceedings would be instituted after conviction. He knowingly elected to run this risk and entered into the plea rather than go to trial and chance conviction of charges which most certainly would have resulted in his deportation.
It must be further concluded that petitioner has not proven the essential allegations of the petition and that it has not been established that in representing petitioner Attorney Thompson's performance was deficient or fell below the objective standard required under Strickland.
Petitioner has also failed to establish the second element ofStrickland, that he suffered actual prejudice as a result of the advice given by his attorney. This conclusion is at variance with petitioner's allegations that he was denied due process of law as guaranteed by the federal and state constitutions because his guilty pleas were not knowing, voluntary and intelligent because he erroneously believed, through no fault of his own, that he would not be deported.
Before Judge Sullivan accepted petitioner's pleas of guilty on June 12, 1998, he canvassed petitioner as required by Connecticut Practice Book §§ 39-19 and 39-20. In his canvass the judge, as required by General Statutes § 54-1j (a), stated to petitioner, "I have to advise you, sir, that if you're not a citizen of the United States, conviction of these offenses could have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States; do you understand that as well?" To this, the petitioner replied, "Yeah." The court then stated, "Mr. Dawkins, have you understood everything that I've said to you?" Petitioner replied to this question, "Yeah. So far, yeah." The court then CT Page 7091 stated, "Is there anything that you want to ask? Anything that you're not sure of?" Next followed a colloquy between the judge and petitioner in which the court strived to make certain there was no confusion as to what petitioner was doing and that his plea was voluntary. During this discussion, there was nothing to indicate that petitioner did not understand the advisement concerning deportation. The court, in advising petitioner of the risk of deportation upon conviction, went beyond the minimum required by § 54-1j (a). State v. Webb, 62 Conn. App. 805, 814
(2001).
Petitioner's testimony indicated that he placed little credence in the judge's admonition concerning deportation. He stated that he considered the judge's warning a formality since on several occasions he had received the same warning from other judges and was never deported. At best, petitioner appears to have adopted a subjective comprehension of the courtroom proceedings and the judge's canvass in which, although he heard the words, he chose his own understanding of what was being said. For example, despite the terms of the plea agreement, which was explained in detail to him, petitioner claimed surprise at receiving a 14-month sentence.
Despite the fact that he considered the judge's warning that a conviction could subject him to deportation a mere formality, petitioner testified that upon hearing Judge Sullivan's warning, he was so concerned that he turned to Attorney Thompson and said, "What is going on here? Why he just talking about deportation under these crime?" According to petitioner, Attorney Thompson replied, "It's a misdemeanor. That's just a formality. They say that to everybody."
Thompson denied that this happened and said that it would be a "gross mis-service to the client to advise him contradictory to what the judge's canvass would be".
Again, it must be concluded that Attorney Thompson's recollection of what occurred during the canvass is more believable than that advanced by petitioner. It is difficult to believe that an attorney would advise his client to ignore the judge's warning. There would be no good reason for him to do that. It is also significant to note that the transcript of the proceedings of June 12, 1998 indicate that twice during the judge's canvass, the reporter noted "[w]hereupon, counsel confers with his client." There was no such notation by the court reporter at the time petitioner claimed he discussed the deportation warning with Attorney Thompson indicating that such conference did not occur.
It has not been proven that Attorney Thompson's representation of petitioner was deficient or that, as claimed, he advised petitioner he CT Page 7092 would not be deported upon conviction of misdemeanors. Even if this did occur, petitioner suffered no prejudice since the judge properly advised him of the risk of deportation prior to accepting the guilty plea. If he chose to ignore the warning, he did so at his peril. It is found that he accepted this risk and entered his plea. Contrary to the allegation in the petition, the plea was made knowingly, voluntarily and intelligently. Petitioner must have known that there was a strong likelihood that he would be deported upon conviction.
Petitioner advances the case of State v. Vieira, 760 A.2d 840
(N.J.Super.L. 2000). As precedent for the requirement that a lawyer in a criminal case must correctly address the issue of deportation and properly advise the client of the actual risk of deportation. That case is quite different from the case at bar, however. In Vieira, the court stated the general rule in New Jersey was "the effect of defendant's plea on his immigration status has been considered a collateral consequence." Id. 842. Despite this general rule ineffective assistance was found inVieira where the attorney did not inquire into a written form prepared by defendant who had limited ability to read and write English.
The most significant difference between Vieira and the present case, however, is that in New Jersey, a judge is not required to advise a defendant of federal deportation consequences when a plea of guilty is entered. Id. 843. Here, it has been found that petitioner was properly advised of the deportation consequences by the judge prior to the acceptance of his plea as required by law.
It must also be noted that the essential claim in this habeas action is that petitioner will be removed to Jamaica in violation of his constitutional rights. That he actually will be deported and suffer prejudice as required by Strickland has not been proven. Petitioner has appealed the decision of the immigration judge. It must be assumed that there is sufficient substance to this appeal so that it has not been dismissed and is still pending before the Board of Immigration Appeals. If petitioner is successful in his appeal, he would suffer no prejudice as alleged.
Considering all of the evidence, it cannot be found that petitioner has proven his claims of ineffective assistance of counsel or deprivation of due process. Accordingly, the petition is dismissed.
Joseph J. Purtill Judge Trial Referee