[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By his amended petition filed April 4, 2001, petitioner seeks a writ of habeas corpus to allow him to withdraw his pleas of guilty and restore his criminal conviction to the regular docket. He also requests such other relief as law and justice may require.
For reasons hereinafter stated, the petition is dismissed.
Petitioner's claim for a writ of habeas corpus is based upon the alleged inefficiency of counsel in violation of petitioner's rights under the Constitution of the United States and the State of Connecticut.
It is not in dispute that petitioner was subject to an on-site arrest by the police in Norwich on, or about, December 19, 1997 and charged with narcotic violations. These charges came before the Superior Court for the Judicial District of New London, Part A, where Attorney Robin Watkins was CT Page 17234 appointed to represent petitioner as a special public defender. It is Attorney Watkins' representation of petitioner that is claimed to be constitutionally defective.
As a defendant in a criminal proceeding, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of the criminal proceeding. Strickland v.Washington, supra, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 674 (1984). This right arises under the Sixth and Fourteenth amendments to the United States Constitution and Article 1st, § 8 of the Connecticut Constitution." Copas v. Commissioner of Correction, 234 Conn. 139, 153
(1995).
The general standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, supra, 466 U.S. 668. "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999).
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
Only if the petitioner succeeds in this herculean task will he receive a new trial. Denby v. Commissioner of Correction, 66 Conn. App. 809,812-813 (2001).
Where, as in this case, petitioner entered a guilty plea, the standard enunciated in Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366,88 L.Ed.2d 203 (1985), and quoted in Copas, supra, 234 Conn. 156-57, CT Page 17235 applies.
In this situation, "the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence for the defense that was not identified because of ineffective assistance of counsel would have been successful at trial . . . [The United States Supreme Court stated that in] many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Citation omitted; emphasis added; internal quotation marks omitted.)Henry v. Commissioner of Correction, 60 Conn. App. 313, 318 (2000).
The claim of ineffective assistance of counsel is based upon allegations that Attorney Watkins failed to properly communicate with petitioner during the pretrial proceedings. It is also claimed that the attorney failed to call alibi witnesses requested by petitioner and failed to properly advise him concerning his immigration problems. It is also alleged that the attorney failed to properly advise petitioner concerning the charges against him and the sentence that he was exposed to resulting in his plea of guilty being involuntary.
Attorney Watkins, upon being appointed to represent petitioner, reviewed the intake examination made by an investigator from the public defender's office who interviewed petitioner. She also obtained a copy of the police report and all documents in the prosecutor's file. The attorney reviewed these items with petitioner. Petitioner maintained his innocence and claimed that there was a mistaken identification based upon the black jacket which he was wearing and which was common in the area.
Attorney Watkins testified that she met with petitioner six to eight times to review the evidence and discuss possible defenses. Petitioner denies this and testified that he had only three short meetings with his attorney. In resolving this conflict in testimony, the court must be guided by an objective assessment of petitioner's credibility. Aside from his felony convictions and his obvious interest in the outcome of the CT Page 17236 habeas corpus proceedings, it was observed that his testimony suffered from contradictions and selective recollections. The better evidence requires a conclusion that the attorney did meet with her client on a number of occasions to discuss the case.
Petitioner denied the charges and indicated that he wanted to go to trial. He claimed that he had an alibi defense and so informed his attorney, but that the attorney neglected to interview the alibi witnesses. Attorney Watkins testified that petitioner did not mention any alibi defense during their pretrial discussions. She testified that his defense was predicated upon a mistaken identification. When she requested the names of potential witnesses, petitioner failed to supply her with the necessary information.
During his testimony at the habeas corpus trial, petitioner named two people who he claimed were alibi witnesses. The file in this case indicates that on April 10, 2001, respondent requested petitioner to supply the names and addresses of the alibi witnesses. On May 24, 2001, petitioner, by counsel, replied that the requested information was no longer available.
Considering all of the evidence on the subject, it must be found that petitioner has failed to prove his allegations that Attorney Watkins was deficient in not investigating and interviewing alibi witnesses suggested by petitioner.
Petitioner claims that in her representation of him, Attorney Watkins was deficient because she did not properly advise him concerning his immigration problem. After his arrest on the drug charges at Norwich on December 19, 1997, petitioner was released on bond. Petitioner was not a citizen of the United States. He was a citizen of Haiti legally residing in United States. At the time of his arrest in Norwich, petitioner was on probation with a five-year suspended sentence from the Superior Court in Bridgeport.
On March 25, 1998, while petitioner and his attorney were in court in connection with the drug charges, petitioner was served by federal authorities with a summons to a removal proceedings under § 240 of the Immigration and Nationality Act. The summons notified petitioner that he was deportable because he had been convicted on September 24, 1996 in the Superior Court at Bridgeport of the offense of weapons in a motor vehicle. As a result of the INS proceedings, the court (Miano, J.) increased petitioner's bond and he was confined unable to make the increased bond.
It has been held that the effect of a criminal defendant's plea of CT Page 17237 guilty on his immigration status is a collateral consequence since it does not relate to the penal consequences of his plea. Where a criminal defendant was supplied erroneous information by counsel, however, the situation might be different. State v. Vieira, 760 A.2d 840, 842-43
(N.J.Super.L. 2000).
In this case, petitioner testified that he discussed the deportation problem with his attorney and she informed him that if the sentence involved 18 months confinement, INS would probably not be interested in deportation.[1] It is unclear as to when this conversation may have taken place. Attorney Watkins in her testimony did not mention a possible 18-month sentence and an 18-month sentence was not discussed on the record. If such a conversation concerning an 18-month sentence did take place, it is extremely doubtful that it occurred after the deportation proceedings commenced.
It is apparent from the evidence that all parties involved in the court proceedings, the judge, petitioner, his attorney and the state's attorney were aware that petitioner faced deportation as a result of the Bridgeport conviction. The judge carefully addressed the pending deportation problem with petitioner prior to and during the plea canvass. In fact, conditional discharge rather than the usual probation was made a part of the state's offer to resolve this case because of petitioner's impending deportation.
In this case, there is no credible evidence that could afford petitioner the relief sought on a claim that he was ill advised by his attorney on the deportation issue. While a conviction of the drug charges might not enhance his chances at a deportation hearing, it is clear that INS was attempting to deport him, not because of the drug charge, but because of his prior conviction in Bridgeport. In his discussion, on the record and in the plea canvass, the judge went beyond the minimum required by Connecticut General Statutes § 54-1(j)(a) in advising petitioner about the risk of deportation. State v. Webb, 62 Conn. App. 805,814 (2001).
It has not been proven that petitioner's attorney was constitutionally deficient in improperly advising him concerning the risks of deportation or that in view of the judge's instructions, he suffered any prejudice as a result of any advice which the attorney may have rendered him on the subject.
It was also alleged by petitioner that Attorney Watkins was inefficient and that she did not properly advise him about his options for trial and his plea was not voluntary because of the assistance which the attorney gave him. CT Page 17238
The charges against petitioner arose out of observations by the Norwich police. These officers were prepared to testify that they observed petitioner hide a substantial amount of cocaine and that later when they apprehended petitioner he had a baggie in his mouth which he swallowed. Petitioner denied the charges and claimed a mistaken identity. He was charged with possession of cocaine with intent to sell in violation of General Statutes §§ 21a-278(b) and 21a-278a(b). Conviction of offenses under these statutes would probably result in a minimum mandatory sentence of eight years with a possible maximum sentence of 20 years. Also, petitioner was on probation with a five-year suspended sentence. The trial would probably be a credibility contest between petitioner, a convicted felon, and the police.
It does not appear that Attorney Watkins encouraged petitioner to go to trial under these circumstances and she told him that he could get 20 years if he was convicted after trial. Nevertheless, a jury trial had been elected and petitioner insisted on exercising his right to a jury trial. On June 3, 1998, after discussing the matter with petitioner, Attorney Watkins reported to the court, "I believe we are going to place this [petitioner's case] on the trial list, Your Honor." The court (Miano, J.) replied: "Excuse me." Attorney Watkins again repeated that the case was going to the trial list. At this point, the judge made inquiries of petitioner.
At the time, petitioner had been offered a court-indicated sentence, which involved a plea to possession with intent to sell in violation of Connecticut General Statutes § 21a-277(a), a non-mandatory statute, with a sentence often years execution suspended after three years with three years conditional discharge and a right to argue for less. As a part of this agreement, petitioner would be found in violation of his probation which then would be terminated. Petitioner initially rejected this offer and, as indicated by his attorney, elected to go to trial.
The judge discussed the matter with petitioner who informed the court: "I would like to talk a little bit more with my — I would like to talk a little bit more with my lawyer about it." The matter was then passed to allow petitioner to talk with his attorney.
When petitioner's matter came up next, Attorney Watkins stated that petitioner had a question for the court. The judge then reviewed the proposed sentence with petitioner and informed him clearly that although he had a right to argue for a lesser sentence, in all likelihood, the sentence would not be reduced. After the discussion, petitioner stated that he would like to take the offer. At this point, prior pleas and elections for a jury trial were withdrawn and petitioner was put to CT Page 17239 plea. In accordance with the plea agreement, petitioner entered a plea to one count of Connecticut General Statutes § 21a-277(b) under the Alford doctrine.[2] The judge then proceeded with a detailed canvass of petitioner. During the canvass, among other things, the judge indicated that by his plea petitioner was giving up his right to a trial before a judge or a jury. Petitioner indicated that he understood this. The judge asked petitioner if he had discussed the plea of guilty and its consequences with his lawyer and if she had informed him of the elements of the offense to which he had entered his plea. Petitioner affirmed that he had discussed these matters with his lawyer. He also affirmed that he was satisfied with the advice and assistance his lawyer had given him. Near the end of the canvass, the judge asked petitioner if there was anything that he did not understand. To this, petitioner replied: "Everything is clear." Petitioner then repeated this statement.
At the time of sentencing on August 12, 2000, petitioner's claim of innocence came up again. In addressing the court, he stated that he never sold drugs. It would appear that in the presentence investigation petitioner again raised the claim of mistaken identity. In response to these claims, the judge stated that he was inclined to give petitioner a trial. Petitioner, however, indicated that he did not want a trial and feared a conviction with a longer sentence if the matter went to a jury.
From all of the above, it must be concluded that petitioner was properly advised by his lawyer of his right to go to trial and contest the drug charges. The record is clear that he had elected a trial by jury and his attorney reported to the judge that petitioner intended to exercise that right. After a discussion with the judge at his request, petitioner was given more time to discuss his options with his attorney. After doing so and further discussions with the judge, petitioner elected to enter his plea.
During the canvass, petitioner affirmed that his attorney had explained to him certain essential matters and that he was satisfied with her advice. At the habeas corpus trial, however, petitioner testified that he was not completely honest in his answers to Judge Miano's questions and that he considered them essentially pro forma. Examination of the transcript, however, indicates that the judge was most solicitous of petitioner's various concerns and that petitioner replied appropriately to the judge's questions, indicating full understanding on his part.
It cannot be found from the evidence, particularly the transcripts of the court proceedings, that petitioner was not aware of his trial options or that his attorney was ineffective in advising him of those options. There is no credible evidence the attorney's advice rendered the plea involuntary. From all of the evidence, it must be concluded that CT Page 17240 petitioner has failed to prove that counsel was ineffective or that he suffered any prejudice as a result of her representation of him.
Although more appropriately it is a matter which should have been addressed first, this case presents a jurisdictional question. At the time of trial on the habeas petition, petitioner had completed his sentence and was being held on a federal deportation detainer. The only evidence on the subject indicates that the deportation proceedings arose out of the Bridgeport conviction and not the drug charges on which petitioner was represented by Attorney Watkins. For this reason, there is a question as to whether any practical relief could be granted even if the petition had been proven. It would appear that petitioner has finished the incarceration portion of his sentence and is now serving the conditional discharge portion of his sentence. The only possible relief which a writ of habeas corpus could grant petitioner would be relief from that portion of the sentence. This is a slender reed on which to support the jurisdiction of the court.
Accordingly, petitioner, having failed to prove the allegations of the petition, the petition is dismissed.
Joseph J. Purtill Judge Trial Referee.