**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3017-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HASSAN A. MUHAMMAD,

    Defendant-Appellant.

_____

Submitted June 7, 2021 – Decided July 15, 2021

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-06-0934 and 18-06-0935.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Yolanda Ciccone, Middlesex County Prosecutor, attorney for respondent (Nancy A. Hulett, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress physical evidence seized from his home pursuant to a search warrant, defendant pled guilty to first- and second-degree drugs and weapons related offenses. He was sentenced in accordance with the plea agreement to an aggregate sixteen-year term of imprisonment with a seven-year period of parole ineligibility.

Defendant now appeals from the conforming judgment of conviction entered on March 14, 2019, raising the following points for our consideration:

POINT I

BECAUSE THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT WAS NOT BASED ON PROBABLE CAUSE TO BELIEVE THAT CONTRABAND WOULD BE FOUND IN THE HOME THAT WAS THE SUBJECT OF THE WARRANT, THE SEARCH WAS UNCONSTITUTIONAL, AND THE EVIDENCE SEIZED MUST BE SUPPRESSED.

POINT II

THE UNREASONABLE EXECUTION OF THE SEARCH WARRANT REQUIRES SUPPRESSION OF THE CONTRABAND FOUND INSIDE THE APARTMENT.

POINT III

THE TRIAL COURT ERRED IN REJECTING ALL MITIGATING FACTORS DESPITE SUBSTANTIAL MITIGATION EVIDENCE DEMONSTRATING [DEFENDANT'S] STRUGGLE WITH ADDICTION

2

AND THE SIGNIFICANT ROLE HE SERVED AS FATHER TO HIS THREE YOUNG CHILDREN, REQUIRING RESENTENCING.

We have considered these arguments in light of the record and applicable legal principles. We reject each point raised and affirm.

I.

On June 19, 2018, defendant was charged in Middlesex County Indictment No. 18-06-0934 with first-degree maintaining a controlled dangerous substance (CDS) production facility, N.J.S.A. 2C:35-4 (count one); second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2) (count two); second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(2) (count three); third-degree possession of Oxycodone with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(13) (count four); third-degree possession of Xanax with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(13) (count five); fourth-degree possession with intent to distribute drug paraphernalia, N.J.S.A. 2C:36-3 (count six); second-degree possession of a firearm, namely, a Hi-Point C9 handgun, while maintaining a CDS production facility and possessing CDS with intent to distribute, N.J.S.A. 2C:39-4.1 (count seven); fourth-degree unlawful receipt of handgun ammunition, N.J.S.A. 2C:58-3.3(b) (count eight); three

3

counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a) (count nine, ten, and eleven); and third-degree financial facilitation of criminal activity, N.J.S.A. 2C:21-25 (count twelve). In a separate single-count indictment returned on the same date, Indictment No. 18-06-0935, defendant was charged with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

The charges stemmed from the seizure of contraband from defendant's home during the execution of a search warrant. Defendant moved to suppress the evidence, arguing that the search warrant was issued without probable cause and executed in an unlawful manner by police failing to comply with the knock and announce rule.

The affidavit submitted on February 9, 2018, in support of the search warrant application was prepared by North Brunswick Township Police Detective Errol McCalla, Jr., who was working with the Middlesex County Prosecutor's Office Task Force. In the affidavit, after setting forth his educational and experiential background in law enforcement, which included four years of effecting and assisting in multiple drug related arrests, McCalla recounted at length the details of an undercover investigation into drug sales by defendant.

The investigation was initiated in January 2018 after McCalla and another detective met with a confidential informant (CI) who stated that defendant was "distributing quantities of [h]eroin within Middlesex County." The CI, who had never "provided information to law enforcement in the past," claimed that he was "aware of [defendant's] ongoing criminal activity through personal observations and conversations with [defendant]." After the CI confirmed defendant's identity from a photo, a query of a law enforcement database revealed that defendant had a "criminal history" consisting of nine arrests and six convictions, primarily drug related.

Based on this information, the detectives orchestrated four controlled drug purchases by the CI from defendant. The first purchase occurred during the week of January 8, 2018, after the CI called defendant and arranged for the purchase of CDS at a specified location while detectives listened to the conversation. Prior to departing for the pre-arranged meet location, "the CI was searched for drugs, contraband, or money, with negative results," after which the CI was provided with currency to make the purchase. The CI was then surveilled during the entire travel time to the meet location, which was also under surveillance.

5

At the meet location, law enforcement officers observed defendant arrive in a gray Audi A6 bearing license plate J74CWB and "[make] contact with the CI." After the meeting, the CI returned to the predetermined location while defendant remained under surveillance until he traveled to an address listed as his residence on his drivers' license. During "the post-purchase debrief," the CI immediately turned over to law enforcement the CDS he had purchased from defendant, which quantity was "consistent with the amount of [money that had been] provided to the CI" and which a field test later confirmed was heroin. The CI was again "searched for drugs, contraband or money with negative results."

During the week of January 15, 2018, a second controlled purchase was completed repeating the same process followed during the first. During the second transaction, defendant was observed exiting his residence and driving directly to the pre-arranged meet location in a Silver Honda Odyssey bearing license plate C73BZA. The third controlled purchase was completed during the week of January 22, 2018, and repeated the same process followed during the second. Defendant was again observed exiting his residence and driving directly to the pre-arranged meet location. However, defendant drove in the Audi A6 used during the first transaction. Additionally, due to a change in police protocol prohibiting field testing of any unknown white powdery substance, no

6

field test was performed. However, McCalla "believe[d]" that the substance purchased from defendant was CDS based on "appearance" and "packag[ing]." The fourth and final controlled purchase was completed during the week of January 29, 2018, and repeated the same process followed during the third. Again, the evidence was not field tested, but McCalla believed it to be heroin.

The affidavit specified that McCalla sought a warrant to search defendant, his residence, and his Audi A6 for evidence of narcotics trafficking, including "[CDS], monies, paperwork, paraphernalia, packaging materials, adulterants, firearms, . . . and communication devices." To support the request, McCalla affirmed that in his professional experience, those who distribute CDS typically conceal the narcotics "within their residence/property . . . to avoid detection by law enforcement." In the affidavit, McCalla recounted numerous other investigations where police found narcotics secreted in various locations throughout the suspect's residence. The affidavit also specified that McCalla sought to execute "said warrants during the hours of 4:00 [a.m.] and 11:59 [p.m.] within ten . . . days from the issuance hereof by knocking and identifying the officers as police officers and the purpose for being at the premises."

Based on McCalla's affidavit, the court issued the requested search warrants, which were executed on Wednesday, February 14, 2018. During the

testimonial hearing conducted to assess the lawfulness of the execution, McCalla testified that at approximately 8:45 a.m. on February 14, he and approximately five other officers approached defendant's residence. According to McCalla, "[f]or safety reasons," the officers waited until after defendant's wife left the residence with two children before approaching the premises.

McCalla testified he knocked on the door "several times" and announced their presence by stating "police, police, search warrant." After knocking, they "waited at least fifteen seconds if not longer." When no one answered the door, they forcefully entered the premises "[u]tilizing a ram" while continuing to announce their presence. According to McCalla, they made a forced entry into the premises due to concerns that "someone could be disposing [of] or . . . tampering with potential evidence." Once inside the residence, the officers went up the stairs where McCalla observed defendant in the kitchen. The officers proceeded to execute the warrants, as a result of which items were seized from defendant's home which formed the evidential bases for the charges.

For the defense, defendant testified on his own behalf that he was in his apartment on February 14 when he heard two loud bangs and observed the police enter his home. According to defendant, although the officers claimed they knocked and announced themselves, he did not hear either even though he was

8

making tea in the kitchen, which was located "directly" at "the top of the stairs . . . not . . . far from the [front] door." Defendant also testified that his son was in the adjoining living room watching television.

Defendant's wife and her friend also testified on defendant's behalf. Defendant's wife acknowledged that she had taken their two daughters to school and was not home when police arrived. She left the couple's son at home with defendant watching television. Both her testimony and the testimony of her friend were limited to the amount of damage to the door caused by the forced police entry. However, the damage to the door was not disputed and defendant's wife acknowledged on cross-examination that the officers "told [her] that they were going to call maintenance for [her] because they broke the door."

Following the hearing, the trial judge denied defendant's motion. In rejecting defendant's challenge to the lawfulness of the execution of the warrants, the judge relied on State v. Rodriguez, 399 N.J. Super. 192, 195 (App. Div. 2008), holding that police did not "breach[] the 'knock and announce' rule in executing a search warrant" when "they waited fifteen to twenty seconds after announcing their presence before entering the premises." The judge credited Detective McCalla's report and testimony that he knocked and did not receive

9

an answer before breaching the door and determined that the testimony of the defense witnesses was not inconsistent with that finding.

In that regard, the judge explained:

> First of all, the wife and . . . their friend . . . were not even present. Yes, they verified that the door was broken and dented, but that's not disputed. It's not disputed by any of the witnesses that ultimately they gained entry by forcing their way in and . . . battering the door with the . . . ram rod. The question is really whether I believe the [p]olice [o]fficer knocked or not.

> [Defendant] testified he did not hear a knock, but I also know that we're talking about up a staircase with a television on next to the staircase that would make it possible that he might not have heard a knock if one was made.

> I have the credible testimony of . . . Detective McCalla who's very experienced in this type of situation having been on a task force and served for the last six years . . . [who] did testify that there was a knock, they waited fifteen seconds or longer, and he was consistent throughout his testimony that that's what he did.

> I also found the position of . . . the [o]fficers to be reasonable in the overall totality of the circumstances . . . that they waited for the wife and two daughters to leave before they executed this warrant because they were trying to avoid excessive issues or problems outside of the scope of what they were honing in on in terms of this investigation.

> So, I . . . do find the testimony credible. That the [o]fficers did knock before they forced their way in and

the case law does allow a search if the [o]fficers waited fifteen to twenty seconds before forcibly entering which is what happened here.

Turning to the sufficiency of the warrants, the judge stated there was "no evidence that . . . there was some kind of willful falsehood." The judge acknowledged that the CI had never provided information to law enforcement "in the past." However, according to the judge, the CI participated in four controlled purchases that were detailed in the warrant. Further, the CI's information was corroborated by his ability to contact defendant "via phone at the number that was known to be the defendant's number," and by procuring drugs from defendant that was "consistent with" the currency "given to him . . . before [each] transaction." The judge noted that while the officers "may not have actually [seen] drugs exchange hands," the CI and defendant were under constant surveillance. The judge concluded that "based upon the totality of the circumstances[,] . . . the investigation was sufficient to support probable cause to grant the search warrant . . . and the execution of the warrant was done properly."

Subsequently, defendant entered a negotiated guilty plea to first-degree maintaining a CDS production facility (count one), second-degree possession of CDS with intent to distribute (count two), and second-degree possession of a

firearm while committing a CDS offense (count seven) under Indictment No. 18-06-0934, as well as second-degree certain persons not to have weapons under Indictment No. 18-06-0935. Defendant was sentenced in accordance with the plea agreement,[1] and this appeal followed.

## II.

In Point I, defendant renews his challenge to the validity of the search warrant. "[A] search executed pursuant to a warrant is presumed to be valid and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). "Accordingly, courts 'accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant.'" State v. Keyes, 184 N.J. 541, 554 (2005) (alteration in original) (quoting Jones, 179 N.J. at 388).

---

[1] Defendant was sentenced to an eleven-year term of imprisonment with a three-and-one-half-year parole disqualifier on count one, a concurrent seven-year term on count two, and a consecutive five-year term with a three-and-one-half-year parole disqualifier on count seven of Indictment No. 18-06-0934. He was sentenced to a concurrent five-year term with a five-year parole disqualifier on Indictment No. 18-06-0935.

A-3017-18

"Probable cause for the issuance of a search warrant requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. Chippero, 201 N.J. 14, 28 (2009) (citation omitted). To determine whether there was probable cause, we look only at the information within "the four corners of the supporting affidavit." Id. at 26 (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)).

"Information related by informants may constitute a basis for probable cause, provided that a substantial basis for crediting that information is presented." Jones, 179 N.J. at 389 (citing State v. Sullivan, 169 N.J. 204, 212 (2001)). The issuing court must consider the totality of the circumstances in determining whether an informant's tip establishes probable cause, including the informant's "veracity and basis of knowledge." Ibid. (quoting State v. Novembrino, 105 N.J. 95, 123 (1987)). "[R]elevant corroborating facts may include a controlled drug buy performed on the basis of the tip, positive test results of the drugs obtained, records confirming the informant's description of the target location, the suspect's criminal history, and the experience of the officer who submitted the supporting affidavit." Keyes, 184 N.J. at 556 (citing Jones, 179 N.J. at 390-91). "[A] successful controlled [drug] buy 'typically will

13

be persuasive evidence in establishing probable cause.'" Ibid. (quoting Jones, 179 N.J. at 392) (internal quotation marks omitted).

Here, we are satisfied that the affidavit provided ample probable cause for the issuance of the warrant to search defendant's home. Indeed, four successful controlled buys constitute compelling evidence to establish probable cause. Further, despite the fact that the CI had never provided information to law enforcement in the past, the police corroboration demonstrated that the CI was sufficiently reliable. See Sullivan, 169 N.J. at 214-16 (holding that although the CI had no history of providing reliable information to the police, two controlled purchases of cocaine along with additional police corroboration, including confirmation that the substance purchased by the CI was cocaine, sufficiently demonstrated probable cause, and the inability of the police to observe the actual transactions was not fatal).

Defendant argues that "[b]ecause police failed to show probable cause connecting the home to drug activity, the search was unconstitutional, and the evidence seized from the home must be suppressed." However, in addition to Detective McCalla connecting the home to drug activity in his affidavit based on his professional experience, on three separate occasions, defendant was observed by police traveling directly to the meet location from his home to

14

conduct the drug transactions with the CI. Thus, the totality of the circumstances established probable cause that defendant harbored drugs in his residence. Our holding is guided by the principle that warrant applications "should be deemed legally sufficient so long as they contain[] factual assertions which would lead a prudent [person] to believe that a crime [has] been committed and that evidence … of the crime [is] at the place sought to be searched." Sullivan, 169 N.J. at 217 (alterations in original) (quoting State v. Laws, 50 N.J. 159, 173 (1967)).

In Point II, defendant argues that "the fifteen-second wait between knocking and breaking down the door" was "patently unreasonable" because "police had no information that anyone else was inside and had no reason to believe that [defendant] was armed or violent." Thus, according to defendant, "[w]ithout additional circumstances requiring quick entry," the warrant was "unreasonably executed" in violation of the knock and announce rule.

"The knock-and-announce rule renders unlawful a forcible entry to arrest or search 'where the officer failed first to state his authority and purpose for demanding admission.'" State v. Robinson, 200 N.J. 1, 13-14 (2009) (quoting Miller v. United States, 357 U.S. 301, 308 (1958)). "A necessary corollary to the knock-and-announce rule is that when 'the police announce[] their presence

and [are] greeted with silence . . . a reasonable time must elapse between the announcement and the officers' forced entry.'" Id. at 16 (alteration in original) (quoting State v. Johnson, 168 N.J. 608, 621 (2001)).

Generally, "[t]here are common factors to be applied in determining the reasonableness of the delay between knocking and announcing and a forcible entry," including "a suspect's violent criminal history," "an informant's tip that weapons will be present," "the risks to officers' lives and safety," "the size or layout of defendant's property," "whether persons other than defendant reside there," "whether others involved in the crime are expected to be present," and "the time of day." Id. at 17 (citations omitted). However, in drug cases, a reasonable wait time is generally measured by the amount of time it would take to dispose of drugs, rather than the time it would take a resident to reach the door. Ibid.

In Robinson, our Supreme Court held that a delay of twenty to thirty seconds between knock and announcement and forcible entry was reasonable where the object of the warrant was drugs and there was a potential for the destruction of evidence while entry was delayed. Id. at 17. In Rodriguez, we concluded that in the totality of circumstances, a wait of fifteen to twenty seconds after announcement was reasonable where "the objects of the search

were drugs and other evidence related to illegal drug trafficking." 399 N.J. Super. at 200-02.

Here, the testimony credited by the judge established that the police knocked and announced their presence and waited "fifteen seconds or longer" before forcibly entering the residence. The judge concluded that the wait time was reasonable under the circumstances. We give deference to findings "which are substantially influenced by [the motion judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007). While we need not defer to a judge's interpretation of the law, State v. Shaw, 213 N.J. 398, 411 (2012), a trial judge's findings "should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Elders, 192 N.J. at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

The record here overwhelmingly supports the judge's findings, and her legal conclusion is unassailable. The wait time was reasonable, especially considering that the object of the warrant was the seizure of drugs and evidence related to illegal drug trafficking. Thus, the entry team did not violate the knock and announce rule, and reasonably executed the search warrant.

In Point III, defendant argues "[he] should not have been sentenced above the statutory minimum." He argues that "[d]espite the strong mitigating evidence" of "his addiction, desire to seek treatment, and substantial family obligations [as a father of three young children], the trial judge found no mitigating factors." Defendant continues that the judge "erred in not finding mitigating factors four and eleven."

We review sentences "in accordance with a deferential standard," State v. Fuentes, 217 N.J. 57, 70 (2014), and recognize "that appellate courts should not 'substitute their judgment for those of our sentencing courts.'" State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)). Thus, we will

> affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

"While the sentence imposed must be a lawful one, the court's decision to impose a sentence in accordance with the plea agreement should be given great respect, since a 'presumption of reasonableness . . . attaches to criminal

sentences imposed on plea bargain defendants.'" State v. S.C., 289 N.J. Super. 61, 71 (App. Div. 1996) (quoting State v. Sainz, 107 N.J. 283, 294 (1987)).

Here, the judge found aggravating factors three, six, and nine, which defendant does not dispute. See N.J.S.A. 2C:44-1(a)(3) ("[t]he risk that . . . defendant will commit another offense"); N.J.S.A. 2C:44-1(a)(6) ("[t]he extent of . . . defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"); and N.J.S.A. 2C:44-1(a)(9) ("[t]he need for deterring . . . defendant and others from violating the law"). The judge also determined there were no mitigating factors but sentenced defendant in accordance with the plea agreement despite the overwhelming aggravating factors.

Defendant asserts the judge erred in not considering his drug addiction and childcare responsibilities to support mitigating factors four and eleven. See N.J.S.A. 2C:44-1(b)(4) ("[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"); N.J.S.A. 2C:44-1(b)(11) ("[t]he imprisonment of the defendant would entail excessive hardship to the defendant or the defendant's dependents").

However, the judge considered defendant's "substance abuse issue," and his indication that "he last used the day before th[e] incident" but did not find

19

that it rose to the level of a statutory mitigating factor. See State v. Ghertler, 114 N.J. 383, 390 (1989) (rejecting "defendant's contention that his drug dependency should be considered a mitigating factor"). The judge also rejected defendant's reliance on mitigating factor eleven, noting that while "it is always a hardship when a parent goes to jail," in "the[se] circumstances," the children "have their mother who is able to care for [them] along with the extended family."

Applying our deferential standard of review, we are satisfied that the judge's findings are amply supported by the record, that the sentence comports with the guidelines enunciated in the Code of Criminal Justice, and that the aggregate sentence does not reflect an abuse of discretion or shock our judicial conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3017-18