**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3056-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CEDRICK TUCKER,
a/k/a CEDRIC KAREEM
TUCKER,

    Defendant-Appellant.

_____

Submitted November 18, 2024 – Decided April 9, 2025

Before Judges Gummer and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 18-05-1497.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Steven J. Sloan, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Stephen A. Pogany, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Cedrick Tucker appeals from a June 2, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. For reasons that follow, we affirm.

I.

This case stems from a series of crimes perpetrated by defendant against the mother of his children, C.T.[1] On December 30, 2016, defendant entered C.T.'s house and physically assaulted her in the presence of their two minor children. C.T. was treated for a laceration on her arm, an abrasion to her left shoulder, and a hematoma on her forehead.

On November 17, 2017, defendant returned to the victim's house in violation of a no-contact order entered as a condition of his pretrial release, demanding that she drive him to work. C.T. refused, whereupon defendant took her car keys and drove off with her car. After C.T. threatened to call the police, defendant returned to the house and demanded C.T.'s phone in exchange for the car keys. When C.T. refused, defendant threatened her with a knife. After his arrest for this series of offenses and while incarcerated at the Essex County Jail, defendant contacted C.T. to deter her from testifying.

---

[1] We use initials to protect this victim of domestic violence. See R. 1:38-3(c)(12).

An Essex County grand jury returned an indictment charging defendant with ten counts: (1) second-degree aggravated assault, N.J.S.A. 2C:12-1(b); (2) fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); (3) third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); (4) second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); (5) second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); (6) second-degree burglary, N.J.S.A. 2C:18-2; (7) third-degree terroristic threats, N.J.S.A. 2C:12-3(b); (8) fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); (9) third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d); and (10) third-degree witness tampering, N.J.S.A. 2C:28-5(a)(1).

Pursuant to a plea bargain, defendant pleaded guilty in May 2019 to second-degree aggravated assault, second-degree burglary, third-degree possession of a weapon for an unlawful purpose, and third-degree witness tampering. In exchange, the State agreed to dismiss the remaining counts in the indictment and recommend a prison term not to exceed eight years, with 85% parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

At sentencing in July 2019, defendant directly apologized for his criminal

conduct and expressed remorse. Speaking for himself, defendant also requested that the court find his work with the Newark mayor's office and counseling of troubled teens to be mitigating factors. Counsel echoed defendant's request, asking the court to extend defendant "some leniency" given his remorse and involvement in the community. Three co-workers scheduled to testify on defendant's behalf were not present in court when the case was called, purportedly because they were late in arriving. Defendant voiced concern regarding his co-workers' absence and informed the court that they would have testified that he had "serve[d] his community."

The sentencing court took into consideration defendant's civic work but declined to afford it any weight. Nor did the court find present any other statutory or non-statutory mitigating factors. The court found applicable aggravating factors three (risk of re-offense), six (defendant's prior criminal record), and nine (the need for deterrence). Consistent with the State's recommendation, the court imposed an aggregate term of eight-years with 85% parole ineligibility, subject to NERA, mandatory fines and penalties.

On June 24, 2021, defendant filed a pro se PCR petition. After securing legal representation, counsel filed a superseding PCR petition on June 13, 2022. In that petition, defendant contended that trial counsel had been ineffective for

his failure to (1) request additional time to permit the testimony of the three-character witnesses; and (2) present statutory mitigating factors eight and nine; namely, that defendant's conduct was unlikely to recur and his character indicated he was unlikely to commit another criminal offense. N.J.S.A. 2C:44-1(b)(8) and (9). In oral and written decisions issued on June 2, 2023, the PCR court concluded defendant had not established a prima facie case of ineffective assistance of counsel. The PCR court denied defendant's petition and his request for an evidentiary hearing. In its ruling, the PCR court also emphasized that defendant's plea bargain conferred "a significant benefit" on him. The court further reasoned that the co-workers' testimony would not have changed the outcome of the proceedings and the record did not support the finding of any statutory mitigating factor.

## II.

Defendant raises the following arguments on appeal:

> POINT I
>
> THE PCR COURT MISAPPLIED THE LAW IN DENYING THE DEFENDANT'S PETITION FOR POST CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION HE WAS PROVIDED WITH INEFFECTIVE ASSISTANCE OF COUNSEL

A-3056-22

POINT II

THIS MATTER MUST BE REMANDED FOR AN EVIDENTIARY HEARING BECAUSE SENTENCING COUNSEL WAS INEFFECTIVE FOR FAILING TO PROPERLY ARGUE STATUTORY MITIGATING FACTORS AT SENTENCING.

POINT III

DEFENDANT IS ENTITLED TO AN EVIDENTIARY HEARING AND POST-CONVICTION RELIEF BECAUSE SENTENCING COUNSEL DID NOT PRESENT OR ARGUE ANY NON-STATUTORY MITIGATION DURING THE SENTENCING HEARING.

III.

We review the PCR court's legal conclusions de novo.  State v. Nash, 212 N.J. 518, 540-41 (2013).  The de novo standard of review also applies to mixed questions of fact and law.  State v. Harris, 181 N.J. 391, 420 (2004).  We may "conduct a de novo review" of the court's "factual findings and legal conclusions" where, as here, the PCR court did not conduct an evidentiary hearing.  Id. at 421; see also State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020).

Rule 3:22-10(b) provides that:

> [a] defendant shall be entitled to an evidentiary hearing only upon the establishment of a prima facie case in support of post-conviction relief, a

6

determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief.

"Although Rule 3:22-1 does not require evidentiary hearings to be held on post-conviction relief petitions, [it] recognizes judicial discretion to conduct such hearings." State v. Preciose, 129 N.J. 451, 462 (1992). Generally, "a defendant's claim of ineffective assistance of trial and appellate counsel is more likely to require an evidentiary hearing because the facts often lie outside the trial record and because the attorney's testimony may be required." Ibid. However, the fact that the PCR petition concerns a claim of ineffective assistance of counsel does not in itself entitle defendant to an evidentiary hearing. See ibid. Instead, evidentiary hearings should be granted "to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of post-conviction relief." Ibid.

A defendant requesting an evidentiary hearing for an ineffective assistance of counsel claim in a PCR petition must satisfy a two-part test. First, defendant must establish a prima facie case of ineffective assistance of counsel by demonstrating the reasonable likelihood of succeeding under Strickland v. Washington, 466 U.S. 668 (1984), and State v. Fritz, 105 N.J. 42 (1987). Under

the <u>Strickland</u>-<u>Fritz</u> standard, "the first [prong] is whether counsel's performance was deficient" and "[t]he second, and far more difficult, prong . . . is whether there exists 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>Preciose</u>, 129 N.J. at 464 (quoting <u>Strickland</u>, 466 U.S. at 694). Second, defendant must show that "details of trial counsel's alleged failings lay outside the trial record." <u>Id.</u> at 461. In this case, defendant recited two alleged errors committed by trial counsel: failure to arrange for witness testimony and failure to argue certain non-statutory mitigatory factors.

We review the record de novo in a light most favorable to defendant to determine whether a prima facie claim was established. Regarding the first of the alleged errors — purported failure of trial counsel to request additional time for defendant's character witnesses to arrive — the record is complete.

> DEFENDANT: Um, I have some people, my ex-colleagues from the mayor['s] office, wanted to come in and speak on my behalf today; but, however, they was, um, they're running late, so they're not here.
>
> . . .
>
> DEFENDANT: Your Honor, I served the community very well. I worked for the mayor of Newark. I counseled and mentored troubled teens . . .
>
> THE COURT: Okay.

DEFENDANT: . . . to prevent them from -- from gang banging. I went up to high schools and taught the kids every day, five days a week. I got 'em signed up enrolled in school and for work. I thought I served my community well.

. . .

Uh, people from the -- mayor['s] office were coming here to speak on my behalf today. I asked my attorney can he please hold it up so 'till these people get here, but he couldn't. So, I just wanted to let that be known. I did serve my community, Your Honor, very well, --

THE COURT: I –

DEFENDANT: -- you know what I mean?

THE COURT: I took that into consideration.

DEFENDANT: Yes, sir.

THE COURT: Okay? Unfortunately, that is not one of what we call statutory mitigating factors, as I'm sure counsel has explained to you. But I did take that into consideration, okay?

From this dialogue, it is apparent that through no fault of counsel, defendant's witnesses did not punctually appear. The record further shows that the court was made aware of this circumstance. Whether that information was conveyed by counsel or defendant is of no moment. Having received notice of the witnesses' absence, the court was capable of holding the sentence in abeyance for later in the day or adjourning it. The court chose to proceed,

9

explicitly stating it had taken into consideration defendant's civic work. In view of defendant's attestation of his achievements and the court's consideration of the substance of the witnesses' anticipated testimony, their absence had "an isolated, trivial effect" on the outcome of proceedings. Strickland, 466 U.S. at 696.

Defendant also maintained trial counsel was ineffective for failing to argue defendant's criminal conduct was unlikely to recur and that defendant's character and attitude indicated he was unlikely to commit another offense, mitigating factors eight and nine. We disagree. Trial counsel's decision not to explicitly argue factors eight and nine was not ineffective; it was sensible on its face. In sentencing defendant, the court highlighted defendant's criminal history: ". . . seven prior indictable convictions, a number for which very serious criminal -- or, uh, excuse me -- a number of convictions are for very serious indictable offenses. There's no evidence before this Court to detract from the reasonable likelihood that Mr. Tucker will offend again." Considering defendant's extensive criminal record and his continuous harassment of the victim as integral to the offense to which he had pleaded guilty, stressing factors eight and nine would have left counsel to argue a position without merit. Instead, the record reflects counsel made a tactical decision to have his client

10

take responsibility and seek leniency, emphasizing his remorse and contributions to the community:

> At this time, Your Honor, we would just ask that you show, if possible, Mr. Tucker some leniency. Uh, he understands the error of his ways. He actually wrote a letter acknowledging the error of his ways. Um, Mr. Tucker was a pillar of the community. He did work for the community.

This tactic was endorsed by defendant himself, who echoed counsel's remarks:

> I would like to say first of all, I'm very remorseful and I humbly apologize for my ex-wife. If I can take it back, I would, um, however, I stand here before you today asking you . . . if it's possible, can you, uh, have a -- have a little leniency on me?
>
> . . .
>
> So, I'm just -- I take full responsibility. I'm very regretful and I'm very remorseful, and I just ask, uh, can you do me (indiscernible)? And that's it.

That a given tactic does not result in the desired outcome does not render counsel's service ineffective, especially where, as here, it is facially sound. Rather, there is a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Given that presumption, "complaints 'merely of matters of trial strategy' will not serve to ground a

11

constitutional claim of inadequacy of representation by counsel." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)); see also State v. Echols, 199 N.J. 344, 357-59 (2009).

Further in this regard, it is important to note the sentencing court was inclined to reject the plea bargain entirely, but decided to accept it based on the non-statutory factor concerned — defendant's community service. Considering defendant's punitive exposure before accepting the plea bargain, this circumstance strongly militates against ineffectiveness:

> THE COURT:  Let me also say this, Mr. Tucker.  I had a very difficult time accepting this plea agreement in light of your prior history, okay?  The fact that I accepted this plea agreement and sentenced you in accordance with the plea agreement was certainly affected, again, by that fact or that factor.  But for –
>
> DEFENDANT:  Alright.
>
> THE COURT: -- that [community service] factor, I don't think I would have accepted this plea to be quite honest with you.
>
> DEFENDANT:  Okay.

In this respect too, defendant's position and the court's response to it was sound.  "While the sentence imposed must be a lawful one, the court's decision to impose a sentence in accordance with the plea agreement should be given great respect, since a 'presumption of reasonableness . . . attaches to criminal

sentences imposed on plea bargain defendants.'" State v. S.C., 289 N.J. Super. 61, 71 (App. Div. 1996) (quoting State v. Sainz, 107 N.J. 283, 294 (1987)).

After reviewing counsel's conduct in the context of the totality of circumstances, we conclude that trial counsel's performance was not deficient on its face, and we need not address the prejudice prong of the Strickland-Fritz test, except to note that there is nothing in the record to suggest that had the purported deficiencies been otherwise, the outcome of the proceedings would have been different. Strickland, 466 U.S. at 669. As such, we agree with the PCR court that defendant failed to make a prima facie claim of ineffective counsel and was properly denied an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division